PEOPLE v OLIPHANT

1. CRIMINAL LAW—COMPETENCE—NUNC PRO TUNC HEARING—DUE
   PROCESS—FAIR TRIAL.
   A *nunc pro tunc* hearing on competency to stand trial ordered by
   the Court of Appeals did not violate a defendant's right to due
   process of law and to a fair trial; whether or not a *nunc pro
   tunc* competency hearing may satisfy due process requirements
   depends on the facts of each case.

2. CRIMINAL LAW—COMPETENCE—HEARING—EVIDENCE.
   A trial court's earlier failure to hold a formal hearing on compe-
   tency to stand trial was not reversible error where at a later
   competency hearing ordered by the Court of Appeals defendant
   chose to offer no evidence to counter the testimony of the
   examining psychiatrist assigned to defendant at the Center for
   Forensic Psychiatry, but instead relied upon the trial court's
   failure to hold an earlier formal competency hearing as consti-
   tuting per se reversible error, and where there is nothing in
   the diagnostic report which would sustain a finding of incompe-
   tence, the contents of the report were known to both counsel
   and the court before defendant went to trial, and there is
   nothing in the trial record which would even hint of incompe-
   tence; defendant was at all relevant times competent to under-
   stand the nature and object of the proceedings against him and
   to assist counsel in his defense in a rational and reasonable
   manner.

3. RAPE—WITNESSES—EVIDENCE—SIMILAR ACTS—ADMISSIBILITY—
   STATUTES—INSTRUCTIONS TO JURY—PROSECUTOR'S REMARKS—
   PRESUMPTION OF INNOCENCE.
   Testimony of witnesses regarding a defendant's alleged scheme,
   plan, or system to commit rape was admissible under the
   statute where before the witnesses testified the trial court

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 21 Am Jur 2d, Criminal Law §§ 173, 221.
[3] 29 Am Jur 2d, Evidence §§ 320, 321, 333.
[4] 30 Am Jur 2d, Evidence §§ 1080, 1084.
   Credibility of witness giving uncontradicted testimony as matter for
   court or jury. 62 ALR2d 1191.

instructed the jury on the uses to which the evidence was limited under the statute, that the witnesses' testimony could not be used to show guilt of other crimes, a criminal character, or propensity to rape, and that the defendant had been previously acquitted of charges of rape upon complaints signed by them, and where the court repeated the limiting instructions in its charge to the jury, and where the prosecutor, in his closing argument, had also stressed the limited use of the witnesses' testimony, and where the only ultimate fact which the jury was asked to determine was whether defendant had committed the acts with which he was charged; a rebuttable or conclusive presumption of innocence notwithstanding, the statute allows proof of criminal acts other than the crime charged for the purpose of shedding light on the allegations in the information and not for the purpose of punishing a defendant for those acts (MCLA 768.27).

4. RAPE—WITNESSES—EVIDENCE—SIMILAR ACTS—ADMISSIBILITY—
STATUTES—PREJUDICE—PROBATIVE VALUE.

Testimony of witnesses regarding the conduct of a defendant on prior occasions and in conditions similar to those which existed on the day of the alleged crime of rape with which defendant was charged was highly probative and it tended to prove that complainant became on that date the object of defendant's plan to pick her up and to orchestrate circumstances in such a way that subsequent sexual acts might later be viewed as consensual if she did not voluntarily submit; the Court of Appeals cannot say that the testimony's prejudicial impact outweighed its probative value and that it should not have been admitted into evidence (MCLA 768.27).

Appeal from Ingham, Donald L. Reisig, J. Submitted Division 2 January 8, 1974, at Lansing. (Docket No. 14975.) Decided March 26, 1974. Leave to appeal applied for.

Charles Oliphant was convicted of rape and gross indecency. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Raymond L. Schodeller,* Prosecuting Attorney, and *James R. Ramsey,* Special Assistant Prosecuting Attorney, for the people.

*Allan C. Miller,* Assistant State Appellate Defender, for defendant.

Before: QUINN, P. J., and DANHOF and ALLEN, JJ.

DANHOF, J. Defendant was twice tried before a jury on charges of forcible rape, MCLA 750.520; MSA 28.788, and gross indecency, MCLA 750.338b; MSA 28.570(2). Prior to the first trial which ended in jury disagreement on January 14, 1972, defendant through his then counsel filed a motion for diagnostic commitment for an examination on his competency to stand trial. The record indicates that defendant was not in complete agreement with counsel's desire for such an examination. Pursuant to GCR 1963, 786.3, defendant was remanded to the Center for Forensic Psychiatry. When the diagnostic report was received from the center, it appears that defense counsel did not wish to dispute the findings of competency therein. At a hearing on another defense motion, defense counsel waived a formal competency hearing and agreed to prepare an order which was thereafter signed by the trial court declaring defendant competent to stand trial. Thereafter, during the course of two trials in which defendant took an active part in assisting counsel, the order declaring defendant to be competent was not challenged.

Retrial ended on May 11, 1972 in a jury verdict of guilty as charged on both counts. On June 2, 1972, defendant was sentenced to a term of 20 to 30 years for rape and to a term of 4 to 5 years for gross indecency. Defendant thereafter filed a motion in this Court for peremptory reversal because of the trial court's failure to hold a competency hearing as required by MCLA 767.27a; MSA 28.966(11). By order dated April 12, 1973, this

Court denied defendant's motion, but remanded the case for a hearing on defendant's competency to stand trial. At that hearing, the trial court received testimony from the psychiatrist who had examined defendant at the forensic center and from other witnesses. Based on this testimony and the earlier diagnostic report, the trial court found, by order dated June 19, 1973, that defendant had been at all times competent to stand trial.

## I

Defendant does not specifically challenge the trial court's finding of competency, but rather claims that the *nunc pro tunc* competency hearing ordered by this Court violated defendant's right to due process of law and to a fair trial. In *People v Lucas,* 47 Mich App 385, 390–391; 209 NW2d 436, 439 (1973), this Court found error in the trial court's failure to conduct the competency hearing required by MCLA 767.27a, *supra,* even though this hearing was waived by defense counsel, but declined to accept defendant's contention that the error was per se reversible:

"The trial judge's failure to conduct the requisite hearing does not ipso facto necessitate a reversal of defendant's conviction. The error caused by this failure can be cured by a remand for the appropriate examination with disposition governed by the outcome of such examination. *Cf. People v Pena,* 383 Mich 402 [175 NW2d 767] (1970). Accordingly, we remand and direct a competency hearing to be conducted. If defendant is found to have been competent to stand trial at the time he pled guilty, his conviction is affirmed. Contrariwise, if defendant is found to have been incompetent to stand trial at the time he pled guilty, his conviction shall be set aside and a new trial granted."

In the case at bar, we see no reason to deviate

from our holding in *Lucas* that whether or not a *nunc pro tunc* competency hearing may satisfy due process requirements depends on the facts of each case.

Defendant argues that the decisions in *Pate v Robinson,* 383 US 375; 86 S Ct 836; 15 L Ed 2d 815 (1966) and *Hansford v United States,* 124 App DC 387; 365 F2d 920 (1966), were reaching for the principle which this Court now has the opportunity to grasp: that a *nunc pro tunc* competency hearing constitutes under all circumstances a violation of due process as guaranteed by US Const, Am XIV. We disagree.

In *Robinson, supra,* the Supreme Court held that a limited hearing in a state court on the issue of competency would no longer be meaningful in view of the facts that a bona fide doubt as to Robinson's competence had been raised at trial by the uncontradicted testimony of four witnesses, and that in such a case Illinois statute then required that competence be determined by the jury. Such a jury would have had to make its determination more than six years after the trial aided only by experts whose opinions would in turn be based on the record of the trial wherein Robinson had not been given the opportunity to fully develop the facts on the issue of competency.

In *Hansford, supra,* defendant was a narcotics addict who prior to trial had been ordered to undergo a mental examination. He suffered withdrawal symptoms when his narcotics supply was terminated at the beginning of his commitment. After 60 days, he was adjudged competent to stand trial and was released on bond. At trial, defendant admitted that he had been using narcotics during trial and his bond was revoked. The trial was, however, allowed to continue the following day

without any inquiry by the trial court as to whether possible withdrawal symptoms were interfering with defendant's ability to understand the nature of the proceedings or to consult with counsel in his defense. In ordering a new trial, the United States Court of Appeals reasoned that a limited competency hearing would not be meaningful since defendant, incarcerated since trial, was no longer under the influence of narcotics and no longer suffering from withdrawal symptoms. Therefore, an expert who examined him a year later could only speculate about his competence at the time of trial.

In the case at bar, there is nothing in the diagnostic report which would sustain a finding of incompetence. The contents of the report were known to both counsel and the court before defendant went to trial for the first time in this matter. Thereafter, there is nothing in the record of either trial which would even hint of incompetence. At the competency hearing ordered by this Court, defendant chose to offer no evidence to counter the testimony of Dr. Gerhardt Hein, the examining psychiatrist assigned to defendant at the center. Instead, both defendant and appellate counsel made it clear that they were relying upon the trial court's earlier failure to hold a formal competency hearing as constituting per se reversible error. Error it was, but in this case not reversible. As was the trial court, we are convinced that defendant was at all relevant times competent to understand the nature and object of the proceedings against him and to assist counsel in his defense in a rational and reasonable manner.

II

The crimes with which defendant was charged

were alleged to have occurred on June 1, 1971. The complainant was then an 18-year-old Michigan State University student. She testified as follows. She had first met defendant at approximately 7:30 p.m. on that date and had agreed to accompany him to a bar near campus where they had a friendly conversation lasting approximately 1/2 hour. Complainant then agreed to go with defendant in his car in quest of a place with a good band where they could dance and continue to talk. She testified that defendant thereafter drove to two establishments which were closed and to a third where complainant was denied entrance because of her age. Stops were also made at two gas stations and a car wash. Complainant began requesting to be returned to her dormitory. Defendant instead drove to a wooded area in the City of Lansing, enroute instructing complainant not to go for the door. Complainant testified that the inside door handle of defendant's car was missing. She testified that defendant parked the car on a dead-end street and there forced her, by means of threats, to engage in intercourse and to participate in various other sexual acts. Defendant did not exhibit a weapon, but stated that he had one. Defendant did not strike her or tear her clothes, but stated that he would harm her if she didn't comply with his demands and remove her undergarments. After intercourse, defendant told complainant to put her pants back on. He told her that he had a wife and kids, and that she should not prosecute for rape. He told her that she couldn't prove rape and that he had a tape recorder in the car. He asked her to sign a piece of paper that she wouldn't prosecute. For want of a pencil, the paper was never signed. He drove complainant back to her dormitory. When she

started to get out of the car, he said, "don't prosecute", and then "be sure and get the license plate of the car".

Inside the dormitory, complainant told her roommate her version of what had transpired. The campus police were called. Complainant was taken to the student health center where an examination revealed evidence of recent intercourse.

Defendant testified in his own behalf. His testimony differed materially from that of complainant on the element of lack of consent necessary to support a conviction of rape. He testified that he and complainant had engaged in acts of fellatio and intercourse on the night in question, but that she had consented thereto. After intercourse, he told her that she had an unpleasant body odor. She appeared angry on the drive back to campus. After letting complainant off at her dormitory, defendant decided to go to the East Lansing Police Department and explain that he and complainant had engaged in sex, had had an argument and that he (defendant) was somewhat apprehensive about what complainant might say or do. He was at the East Lansing Police Station when the report of the alleged rape came in.

There was, therefore, at the close of defendant's proofs a significant conflict in the claims of the people and those of defendant. The people made no claim of physical force, but relied on complainant's testimony that her will had been overcome by fear. *People v Palmer,* 47 Mich App 512; 209 NW2d 710 (1973). Defendant claimed consent and stressed in his testimony the absence of any evidence of physical force. The prosecutor then moved that three women (whom we shall identify as A, B and C) be called to testify regarding defendant's alleged scheme, plan or system under MCLA 768.27; MSA 28.1050 which reads:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant."

After hearing this testimony in the absence of the jury, the trial court determined that it was admissible under the statute. Before the witnesses testified, the trial court instructed the jury on the uses to which the evidence was limited under the statute, and that the witnesses' testimony could not be used to show guilt of other crimes, a criminal character or propensity to rape. Before witnesses B and C testified, the trial court informed the jury that defendant had been previously acquitted of charges of rape upon complaints signed by them. The prosecutor, in his closing argument, again stressed the limited use of the witnesses' testimony. Finally, in its charge to the jury, the trial court repeated the limiting instructions.

Defendant contends that the admission of testimony of witnesses B and C violated his Fifth Amendment guarantee against double jeopardy since defendant had been tried and acquitted of rape in the transactions about which these witnesses testified.

In *People v Johnston,* 328 Mich 213; 43 NW2d 334 (1950), defendant challenged the state's intention in a prosecution for bribery of introducing evidence of certain acts under MCLA 768.27, *supra,* which evidence had previously been admitted

against defendant in a prior prosecution for conspiracy which ended in acquittal. In rejecting defendant's claim the Court stated:

"The general rule on the subject is stated in 22 CJS, p 1118, in the following language:

" 'Similarly, evidence tending to show the commission of other offenses is admissible if it tends to show motive, system, method, or course of conduct, a plan or scheme to commit a series of crimes including the one on trial, or the intimate and apparently confidential relations between the informer and accused. On the other hand, evidence of other offenses which does not tend to prove the bribery charge should be excluded.

" 'The fact that accused was tried and acquitted of the other offense does not bar the introduction of evidence thereof in a prosecution for bribery where such evidence shows the general plan or system of the bribe, or illustrates accused's acts in the transaction on trial, or throws light on the later evidence.'

"In the instant case it is suggested that the doctrine of *res judicata* should be applied to preclude the introduction of testimony offered and received in the prosecution for conspiracy. The language of the second paragraph of the above quotation from CJS is directly in point on this issue. Defendant is not on trial for the offense charged against him in the prior case. The question presently at issue is whether, as charged by the prosecution, he accepted a bribe in violation of the statute on which the information is based. Testimony tending legitimately to establish such offense, or some element thereof, may not be excluded solely on the ground that it was offered and received in the prior case as bearing on defendant's guilt of the offense there charged." 328 Mich at 226–227; 43 NW2d at 340.

The *Johnston* court quoted with approval the following language from *Taylor v State,* 174 Ga 52, 67; 162 SE 504, 512–513 (1932):

" 'Nor is the contention sound that this evidence should have been ruled out because it relates to other

alleged offenses for which this defendant had been previously tried and acquitted. While the defendant had been tried and acquitted of previous alleged offenses, and the verdict of not guilty may have indicated that there was not sufficient evidence to convince the jury beyond a reasonable doubt of his guilt, still that acquittal would not necessarily exclude the evidence, because that evidence may tend to illustrate the acts of the defendant as shown in the transaction for which he is now on trial, and may be considered in connection with the later evidence, and may throw a flood of light on this later evidence, though of itself insufficient to authorize a verdict of guilty.' " 328 Mich at 229–230; 43 NW2d at 341.

Defendant contends that *Johnston* is no longer viable in light of *Ashe v Swenson,* 397 US 436; 90 S Ct 1189; 25 L Ed 2d 469 (1970). We disagree. *Ashe* involved a conviction for armed robbery of one member of a poker party after defendant had been previously acquitted of the armed robbery of another participant in the same game. It was clear that defendant's acquittal in the first trial resulted from a jury determination that the state had not met its burden of proving defendant's participation in the robbery. The Supreme Court held that the state was barred by the doctrine of collateral estoppel from relitigating the identification issue necessary for conviction after it had been decided in defendant's favor in the first trial:

"After the first jury had acquitted the petitioner of robbing Knight, Missouri could certainly not have brought him to trial again upon that charge. Once a jury had determined upon conflicting testimony that there was at least a reasonable doubt that the petitioner was one of the robbers, the State could not present the same or different identification evidence in a second prosecution for the robbery of Knight in the hope that a different jury might find that evidence more convincing. The situation is constitutionally no different

here, even though the second trial related to another victim of the same robbery. For the name of the victim, in the circumstances of this case, had no bearing whatever upon the issue of whether the petitioner was one of the robbers." 397 US at 446; 90 S Ct at 1195–1196; 25 L Ed 2d at 477.

*Ashe* did not involve the admissibility of evidence of noncontemporaneous acts under the statute, but rather involved successive prosecutions for contemporaneous acts arising out of the same alleged criminal episode. Our Supreme Court, following Mr. Justice Brennan's concurring opinion in *Ashe,* has adopted the same transaction test to bar successive prosecutions for such acts, regardless of whether the initial determination was acquittal or conviction, thus promoting joinder of all charges against a defendant. *People v White,* 390 Mich 245; 212 NW2d 222 (1973). In the hypothetical situation that the witnesses as well as complainant herein alleged acts on defendant's part sufficiently contemporaneous as to be part of one criminal transaction, and assuming no motion for severance, all charges would be joined for one trial or would be thereafter barred.

In the case at bar, the only ultimate fact which the jury was asked to determine was whether defendant had on June 1, 1971 committed the acts with which he was charged. A rebuttable or conclusive presumption of innocence notwithstanding, the statute allows proof of criminal acts other than the crime charged for the purpose of shedding light on the allegations in the information and not for the purpose of punishing a defendant for those acts. The jury was repeatedly instructed that it was not its function to redetermine the issues of guilt or innocence previously decided in defendant's favor in the trials for rape of witnesses

B and C. The case is therefore inapposite *Wingate v Wainwright,* 464 F2d 209 (CA 5 1972) where the prosecutor argued to the jury that he would prove defendant's guilt not only of the armed robbery with which he was charged, but also of four other robberies of which evidence had been introduced under the Florida similar act statute, and two of which defendant had been acquitted. To the extent that the Court in *Wingate* went further and held that the evidence in issue was barred by *Ashe,* we would agree rather with the reasoning of *United States v Addington,* 471 F2d 560, 567 nt 5 (CA 10, 1973):

"We have noted Wingate v Wainwright, * * * cited by counsel for Addington, but feel it inapposite. There is no claim here that the Government used against Addington evidence of prior criminal acts which the jury in the Elkhart case concluded that he did not commit. *Moreover we have stated the view that the fact of acquittal or conviction of the similar offenses sought to be proved is to be seriously weighed in determining whether to admit such evidence, but that it is not decisive.* See United States v Burkhart, 458 F2d 201, 208 (10th Cir. [1972])." (Emphasis added.)

The admissibility of the testimony of witness A, as well as that of witness B and C, was to be determined on the basis of whether its probative value was outweighed by its prejudicial impact. *People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1973). *People v Kelly,* 386 Mich 330; 192 NW2d 494 (1971). *People v Burton,* 28 Mich App 253; 184 NW2d 336 (1970). In *Kelly,* the defendant was convicted of rape and armed robbery. Evidence of similar acts committed upon victims other than the complainant was held to be admissible under the statute to prove scheme, plan or system. Defendant herein quotes dicta from *People v Davis,*

46 Mich App 80; 207 NW2d 419 (1973), for the proposition that the result in *Kelly* would have been different if Kelly had been prosecuted for a sex offense alone where evidence of similar acts would have been potentially more prejudicial. Such a contention has no support in the language of *Kelly* where convictions of both robbery and rape were affirmed:

"The testimony of Miss Coleman reveals a strikingly similar crime. Again, the defendant allegedly entered Miss Coleman's motel room, forced her at gunpoint to put a pillow case over her head, and then raped her three times. The rapist wore no clothes during the rape. The defendant then allegedly fled with cash, a watch, and a check. Clearly this subsequent act of the defendant tends to show a scheme, plan or system on his part *in performing these acts.*

"The defendant was also forced to testify on cross-examination about his altercation in a motel room with a lady and her boyfriend. *While there was no rape involved in that incident, the facts are sufficient to tend to show a common scheme, plan or system* on the part of the defendant within the latitude of cross-examination." (Emphasis added.) 386 Mich at 334–335; 192 NW2d at 497.

In *People v Phillips,* 385 Mich 30; 187 NW2d 211 (1971), certain photographs of the defendants taken 12 hours after the alleged rape were admitted at trial under the statute as bearing on the element of intent, proof of which is necessary for a conviction on the lesser included offense of assault with intent to rape. As in *Phillips,* the jury in the instant case was instructed on a possible verdict of assault with intent to rape.

Witnesses A, B and C testified as to their encounters with defendant which occurred respectively on December 24, 1970, February 1, 1971 and February 5, 1971 in the East Lansing-Lansing

area. Each met defendant for the first time when they boarded his automobile. Two of the witnesses were students who were hitchhiking while the third was offered a ride as she walked to work. In two instances, defendant was accompanied by a male passenger. Initially, defendant engaged the women in amiable conversation. Defendant thereafter made several stops which could be considered as offering a means of escape. Deviations were then made from the course of travel anticipated by the witnesses. In two instances, the witnesses were persuaded to accompany defendant and a male companion into a house. In each instance, defendant abruptly announced his sexual intentions and threatened the witnesses with loss of life if they did not comply therewith. No weapon was ever openly displayed. Only one witness testified that defendant struck her. In each instance, the women were ordered to remove their lower garments. The sexual acts which followed were of the same pattern. In each instance, defendant offered to return the witnesses to a place of safety. One witness fled the car when defendant stopped at a farm house for gas. The other two were taken to their destinations. Witness C testified that when defendant let her off, he told her it would be a good idea if she went to the police and thereupon gave her his student identification card.

The above testimony on the conduct of defendant on prior occasions and in conditions similar to those which obtained on June 1, 1971 was highly probative. It tended to prove that complainant became on that date the object of defendant's plan to pick her up and to orchestrate circumstances in such a way that subsequent sexual acts might later be viewed as consensual if she did not voluntarily submit. We cannot say that the testimony's prejudicial impact outweighed its probative value.

Defendant has advanced other claims of error relating to the production of a res gestae witness, the use of voter registration lists as the source for the jury array, the admission of certain testimony and physical evidence, and the trial court's instructions to the jury. We have examined these claims and have found them lacking in substance. Decisonal discussion is therefore unnecessary.

Affirmed.

All concurred.