John Allen HUTCHINGS,
Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 77–1630.

United States Court of Appeals,
Fifth Circuit.

Dec. 12, 1977.

Donald A. Smyth, Staff Counsel for Inmates, Texas Dept. of Corrections, Ramsey Unit, Richard A. Dawson, Rosharon, Tex., for petitioner-appellant.

John L. Hill, Atty. Gen., Robert E. DeLong, Jr., David M. Kendall, First Asst. Attys. Gen., Joe B. Dibrell, Jr., Asst. Atty. Gen., Chief, Enforcement Div., Austin, Tex., for respondent-appellee.

Before TUTTLE, COLEMAN and RONEY, Circuit Judges.

COLEMAN, Circuit Judge.

This habeas corpus appellant, a Texas state prisoner convicted of felony theft, claims the collateral estoppel protection of the constitutional prohibition against double jeopardy, *Ashe v. Swenson*, 397 U.S. 436 (1970);[1] *Harris v. Washington*, 404 U.S. 55 (1971);[2] *Turner v. Arkansas*, 407 U.S. 366 (1972).[3] The state and federal district courts have denied relief and the case is now before us *in forma pauperis*. We affirm.

*Ashe* and *Turner* clearly teach that cases of this kind raise issues of *constitutional fact* and must be decided through an examination of the entire record. In other words, every such case must start with the principle that collateral estoppel is part of the double jeopardy guaranty of the Fifth Amendment and thereafter must turn on its own particular facts. The distinction may be noted that collateral estoppel can arise only in circumstances involving a prior acquittal in a prosecution by the same sovereign for an offense grounded on "the same set of facts, circumstances, and the same occasion", *Turner v. Arkansas, supra*, 407 U.S. at 369, 92 S.Ct. at 2098.

Collateral estoppel is established if the prior verdict of acquittal necessarily meant that the defendant could not have been guilty of the offense charged in the second prosecution, *Id.*, 369–70, 92 S.Ct. 2096.

With these principles in mind, we turn to the facts as revealed by a thorough examination of the entire record.

The petitioner, John Allen Hutchings, was the twin brother of James Alton Hutchings. James Alton lived near Cleveland, Liberty County, Texas. On October 23, 1969, he accidentally sustained serious personal injuries, necessitating precipitate departure to a hospital in Houston. About 9 o'clock A.M. on October 25 the wife and son went to the hospital. The doors of the home were locked. The windows had screens and were closed. Upon her return that night, about 9:30 or 10:00, the wife noticed that a window had been opened and a curtain was hanging through it. She then observed that five guns, the property of her husband, in the house when she left that morning, were missing. Drawers had been ransacked. The proof showed that the defendant had lived for a time in the home but had been ordered out about a month previously and had not been back while the brother or his wife was there. He had not been given permission to enter the house nor had anyone been given permission to take the guns. Mrs. Hutchings called in some of the neighbors and also called the officers.

---

1. 90 S.Ct. 1189, 25 L.Ed.2d 469.

2. 92 S.Ct. 183, 30 L.Ed.2d 212.

3. 92 S.Ct. 2096, 32 L.Ed.2d 798.
    See also, *Simpson v. Florida*, 403 U.S. 384, 91 S.Ct. 1801, 29 L.Ed.2d 549 (1971).
    In *Wingate v. Wainwright*, 5 Cir., 1972, 464 F.2d 209, we expanded *Ashe v. Swenson* to hold that an evidentiary matter previously adjudicated against the state could not be relitigated (used) in a subsequent criminal prosecution. This includes testimony previously rejected by a trial jury in another case, *Blackburn v. Cross*, 5 Cir., 1975, 510 F.2d 1014. As will be seen, *post*, we hold that the identity of the gun thief was not decided on Hutchings' first trial for burglary of the dwelling house in which the guns were kept.

Mrs. Gladys Chambers lived next door. She knew the defendant. About the middle of the afternoon of October 25 she saw John Allen Hutchings in the yard of his brother's home. She asked him if he knew that his brother was in the hospital. He replied that he did not and made no further inquiry. He was traveling in a light colored station wagon, accompanied by a man and a woman. Mrs. Chambers did not know them. She did not see anyone enter the brother's house and did not see the visitors leave the premises.

Clyde Dufrene worked at a filling station. About the middle of the afternoon the defendant came to the station, again accompanied by a man and a woman. They were in a light colored station wagon. Hutchings has some guns on the floorboard, behind the front seat. He offered to sell them to Dufrene, who looked in particular at a 16 gauge shotgun, which he identified at both trials, being one of the guns taken from the brother's home. Hutchings wanted $50 for the gun and Dufrene did not have that much money. He, however, bought two claw hammers from Hutchings for fifty cents and a gallon of gas. Hutchings asked "where was the nearest place he could get something to drink". Dufrene told him and the visitors left, headed toward Humble. Dufrene reported the incident to a peace officer.

About 7 o'clock, October 25, officer Theis located a 1954 Ford station wagon in Humble. He saw a gun sticking from under a blanket in the back of the car. He arrested the occupants, including the defendant, thereafter turning car, individuals, and guns over to the authorities at Cleveland. James Alton Hutchings identified the guns as his property in testimony from the witness stand.

The testimony developed that the man and the woman with John Allen Hutchings on October 25 when he was apprehended in Humble were Calvin Wayne Morris and Jeannie Morris, neither of whom ever took the witness stand.

As will hereinafter be related, the petitioner was first indicted and tried for the burglary of his brother's house. The jury acquitted him. He was then tried for theft of the guns in question and convicted. The evidence, as above recited, did not materially differ in either trial. The defense offered no testimony at any time.

The initial result of the occurrences above recited was that in Cause # 10,741 John Allen Hutchings was indicted for the offense of burglary *with intent to commit theft* (emphasis added). A trial jury acquitted him on February 10, 1970. He was then indicted, March 10, 1970, # 10,755, for theft of the guns. On that charge he was convicted after unsuccessfully urging that the second prosecution was barred by collateral estoppel. The conviction was affirmed, *Hutchings v. State*, 466 S.W.2d 584 (Tex.Cr. App., 1971). A petition for certiorari was denied, with Justice Douglas noting his opinion that the writ ought to be granted, *Hutchings v. Texas*, 405 U.S. 935, 92 S.Ct. 971, 30 L.Ed.2d 810.

Petitioner's application for habeas corpus was dismissed by the District Court on December 13, 1976. It being noted, however, that there was no final judgment in compliance with Rule 58, the District Court entered such a judgment on August 23, 1977, dismissing the petition "on its merits".

The appellant argues:

"The only element which the State was unable to prove beyond a reasonable doubt in the 'burglary' case was that of 'identity'. The issue of 'identity' is an element of both Burglary With Intent to Commit Theft and Theft. Petitioner contends that the issue of 'identity' is an 'ultimate fact' that was determined favorable to him in the 'burglary' case and thus, under the mandate of *Ashe*, cannot again be relitigated in any future lawsuit."

It must first be pointed out that at the first trial the defendant was not on trial for theft. The state court did not instruct the jury that it might convict Hutchings of theft. Under Texas law at that time burglary and theft were admittedly separate offenses, even if committed in the same

transaction.[4] The jury did not find, and could not have found, Hutchings not guilty of theft.

As we read the record of both trials we have no difficulty in seeing why the jury refused to convict the defendant of burglary. The evidence is undisputed that an unlawful entry took place, but the critical issue for the jury to decide was: "Who did it?". That the state had to prove to the satisfaction of the jury beyond a reasonable doubt. Nobody saw anybody enter the house. Consequently, it would be a very simple matter for the jury to adopt the not unreasonable view that any one of three people were in position to commit the offense; that in the absence of some proof specifically singling out the malefactor it could as easily have been the man or the woman, or both, who were present at the scene. Therefore, the jury entertained a reasonable doubt as to whether Hutchings had been proven guilty of the actual burglary.

Indeed, at the close of the state's case in the burglary trial defense counsel moved the Court for an instructed verdict of not guilty on the ground "that there is not any evidence at all in this case at this time that the defendant was in the house alleged to have been burglarized", that if any guns were taken that would constitute theft and not burglary, that the defendant was a twin brother of the prosecuting witness, and had lived in the home, with free access to it.

The motion was denied, no doubt on the premise that the undisputed testimony putting the defendant in possession of the guns, and trying to sell them on the very afternoon of the burglary, would allow the jury to infer that he did burglarize the house.

In any event, it requires little imagination to know, although we do not have a transcript of the closing arguments, that defense counsel drove home to the jury, as judges of the facts, the very argument that the Court had correctly rejected as a matter of law.

Appellant argues that Hutchings had the guns, that the only way he could have gotten them was by the burglary of which he was acquitted, therefore the jury by rejecting the burglary charge necessarily had to find that Hutchings had not stolen the guns. This simply claims too much. Although the jury was not allowed to pass on that question, it challenges all rationality to believe that the jury could not have been satisfied that Hutchings was identified in the possession of and attempting to sell the guns. The testimony on this subject was abundant, unimpeached, and undisputed. Following the usual rules of deduction, the jury could have believed beyond a reasonable doubt that Hutchings had the guns but nevertheless remained in doubt as to whether he or his cohorts actually and burglariously entered the house.

Neither is there any lack of intelligence in the thought that a jury would ordinarily be quite reluctant to convict a man of the burglary of the home of his twin brother, where he had recently lived, unless the proof left next to no room for doubt.

"Where a previous judgment of acquittal was based upon a general verdict [a court upon full examination of the entire record must] conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe v. Swenson*, 397 U.S. at 444, 90 S.Ct. at 1194.

In *Johnson v. Estelle*, 5 Cir., 1975, 506 F.2d 347, cert. den. 422 U.S. 1024, 95 S.Ct. 2619, 45 L.Ed.2d 682, we held that if a rational jury could have based its decision in the first trial on the State's failure to establish essential elements not in controversy in the second trial then the double jeopardy criterion does not apply. We were there dealing with a petitioner who had been acquitted of burglary with intent to commit rape and thereafter convicted of assault to commit rape. Upon a thorough evaluation of the record, the panel found that the alternative grounds hypothecated by the State were not of the sort which

---

4. *Pena v. State*, 442 S.W.2d 691 (Tex.Cir.App., 1969).

could move a rational jury, on its own, to acquit.

In our present appeal, the crucial issue in the first trial was who committed the burglarious entry of the brother's home. Actual identification by any eye witness was totally lacking. The identity of the housebreaker was never mentioned in the second trial.

On the other hand, the issue in the second trial—who stole the guns?—was not an issue at all in the first trial. That was not before the jury for its decision. Moreover, there was abundant, unimpeached, uncontradicted eye witness proof as to who had the guns shortly after the burglary, who tried to sell them at the filling station, and who was caught with them in Humble.

Consequently, we are of the opinion that when appellant contends that the failure to identify the burglar in the first trial forecloses the identity of the thief in the second trial he wholly misses the mark on collateral estoppel. A jury quite rationally could hold that the State had not identified the burglar beyond a reasonable doubt and, at the same time, be perfectly willing, if the point had been up to it, to find that there was no reasonable doubt about who stole the guns, whether by his own efforts or through the help of his companions. There was nothing inconsistent or mutually exclusive in the verdicts on these issues, dealing with *separate* crimes committed at the same time.

Thus, under the facts and upon the entire record of the trial for burglary and the trial for felony theft we must conclude that the defendant's acquittal of burglary did not collaterally foreclose the State from prosecuting Hutchings for felony theft.

The judgment of the District Court is AFFIRMED.