Charles Edward OLIPHANT, Jr., Petitioner,

v.

Theodore KOEHLER, Warden, Marquette Branch Prison, Respondent.

No. M 77–52 CA 2.

United States District Court, W. D. Michigan, N. D.

May 16, 1978.

Terence Flanagan, State Appellate Defender, Detroit, Mich., for petitioner.

William Molner, Lansing, Mich., for respondent.

## OPINION AND ORDER

MILES, District Judge.

Petitioner, Charles Edward Oliphant, Jr., has filed an application for a writ of habeas corpus pursuant to the provisions of 28 U.S.C. § 2241 *et seq.* He contends that prejudicial error was committed in the conduct of his state court trial. Respondent has moved for dismissal or, in the alternative, for summary judgment in accordance with Rules 12(b)(6) and 56(b) of the Federal Rules of Civil Procedure. Pursuant to petitioner's motion for oral argument, counsel were heard on these matters on February 6, 1978. The Court has also carefully considered the pre- and post-hearing memoranda submitted by each party, the trial transcripts, and the state and federal cases relevant to the questions presented.

### A. FACTUAL BACKGROUND

The offenses for which petitioner was convicted occurred on the evening of June 1, 1971. At that time, complainant, an eighteen year old Michigan State University student, was returning to her dormitory from dinner when approached by petitioner, who requested her help with a problem. Although she did not then know him, she agreed to accompany him to a bar, where they conversed for approximately one-half hour. It is undisputed that they then proceeded to search without success for a bar with a band. The subsequent events, however, are the subject of divergent testimony.

Complainant testified that at this time she asked to be returned to her dormitory. Instead, petitioner drove her to a wooded area in the city of Lansing, where, by means of threats, he forced her to engage in intercourse and other sexual acts. She further testified that the inside door handle on the passenger side of petitioner's car was missing, which prevented her from escaping. Thereafter, petitioner returned complainant to her dormitory, instructing her

not to prosecute him but to get the license plate number of his car. Complainant then summoned police and reported to the student health center, where an examination revealed evidence of recent sexual intercourse.

According to the testimony of the petitioner, complainant consented to the intercourse and other activities. He denied using threats or force, but testified that on the way back to the dormitory, he informed complainant that she had an unpleasant body odor, to which she took offense. After returning her to the dormitory, petitioner drove to the East Lansing Police Department and expressed concern that complainant might file a complaint against him. While he was there, the report was received.

Petitioner was twice tried on these charges before a jury in the Ingham County Circuit Court. The first trial was declared a mistrial on January 14, 1972 when the jury was unable to agree upon a verdict. The second trial resulted in a conviction for forcible rape and gross indecency. On June 2, 1972, petitioner was sentenced to terms of 20 to 30 years imprisonment on the first charge and 4 to 5 years imprisonment on the second.

The conviction was affirmed in all respects by the Michigan Court of Appeals in an Opinion dated March 26, 1974. *People v. Oliphant*, 52 Mich.App. 242, 217 N.W.2d 141 (1974). It was affirmed by the Michigan Supreme Court in an Opinion dated December 31, 1976. *People v. Oliphant*, 399 Mich. 472, 250 N.W.2d 443 (1976). Mr. Oliphant filed his petition with this Court on April 6, 1977.

### B. ASSIGNMENTS OF ERROR

Petitioner has submitted seven purported assignments of error. They will be considered in the order in which they appear in petitioner's pleadings.

### I.

Petitioner's first assignment of error alleges that the trial court failed to conduct a formal pre-trial competency hearing as required under Michigan law. M.C.L.A. § 767.27a, M.S.A. § 28.966(11).

Prior to petitioner's first trial, he was adjudged competent by the Center for Forensic Psychiatry, whereupon his counsel prepared an Order for the Court's signature declaring Mr. Oliphant to be competent. That determination was not challenged until after petitioner's conviction, at which time the Michigan Court of Appeals remanded the case for a competency hearing. Upon conducting such a hearing, the trial court determined that petitioner had at all times been competent to stand trial.

In considering this objection, the Michigan Supreme Court and Court of Appeals determined that the *nunc pro tunc* competency hearing afforded to the petitioner in this case neither violated the statute nor denied him his constitutional rights. *People v. Oliphant, supra,* 399 Mich. at 500, 250 N.W.2d at 455; *People v. Oliphant, supra,* 52 Mich.App. at 245–47, 217 N.W.2d at 143–44. See *People v. Lucas,* 393 Mich. 522, 227 N.W.2d 763 (1975).

The requirement of a preliminary hearing is procedural only. *Smith v. Peyton,* 280 F.Supp. 669 (W.D.Va.1968). The failure to conduct a preliminary hearing prior to conviction does not constitute the denial of a federal constitutional right. *Ardister v. Hopper,* 500 F.2d 229 (5th Cir. 1974); *Pine v. Estelle,* 470 F.2d 721 (9th Cir. 1972); *Collins v. Swenson,* 443 F.2d 329 (8th Cir. 1971). This assignment of error raises only matters of state law and procedure and involves no federal question of fundamental fairness or constitutional protection. Consequently, it cannot form the basis for federal habeas corpus relief. *Gemmel v. Buchkoe,* 358 F.2d 338 (6th Cir. 1965), cert. denied 385 U.S. 962, 87 S.Ct. 402, 17 L.Ed.2d 306 (1966).

### II.

Petitioner next objects to the prosecutor's line of questioning and the trial court's instructions on the issue of force. Specifically, he contends that the introduction of evidence as to the laceration of complainant's hymen was irrelevant to the issue of

his guilt or innocence and blurred the distinction between physical force and threats.

Since petitioner did not raise this issue in his state appellate proceedings, there is an initial problem of failure to exhaust state remedies. 28 U.S.C. § 2254(b), (c). In *Pitchess v. Davis,* 421 U.S. 482, 487, 95 S.Ct. 1748, 1752, 44 L.Ed.2d 317 (1975), the Supreme Court declared that "exhaustion of state remedies is required as a prerequisite to consideration of each claim sought to be presented in federal habeas." Petitioner in this case has not exhausted his state remedies with respect to his second assignment of error.

█ Moreover, the Court has reviewed the challenged testimony and instructions and concludes that they do not involve constitutional issues and are not so prejudicial as to render the trial fundamentally unfair. Nor does petitioner's allegation that the testimony on the issue of force was irrelevant raise due process issues of constitutional magnitude or entitle him to habeas corpus relief. *Nelson v. Moriarty,* 484 F.2d 1034 (1st Cir. 1973). Accordingly, this assignment of error does not provide a basis for federal habeas corpus relief. *Bassett v. Smith,* 464 F.2d 347 (5th Cir. 1972), cert. denied 410 U.S. 991, 93 S.Ct. 1509, 36 L.Ed.2d 190, reh. denied 411 U.S. 978, 93 S.Ct. 2154, 36 L.Ed.2d 700 (1973); *Pleas v. Wainwright,* 441 F.2d 56 (5th Cir. 1971); *Gemmel v. Buchkoe, supra.*

### III.

Petitioner's third assignment of error asserts that the prosecutor failed to use reasonable efforts to produce a res gestae witness, introducing instead that witness' testimony at the prior trial.

It appears from the trial transcript that on the first day of trial the prosecution moved to strike Officer John Kelly from the information on the ground that he was then in Europe and out of the reach of the court's process. Since petitioner objected to striking Officer Kelly from the list, the Court resolved the matter by having his previous testimony read into the record.

█ Not having been asserted before the Michigan appellate courts, this objection

suffers the same exhaustion infirmity discussed in part II, *supra.* Moreover, this situation appears to fall within the traditional exception to the confrontation requirement which permits the introduction of a transcript of testimony of an unavailable witness which was given at a previous judicial proceeding involving the same defendant and at which the witness was subject to cross-examination by that defendant. *Barber v. Page,* 390 U.S. 719, 722, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Brodkowicz v. Swenson,* 357 F.Supp. 178 (W.D.Mo. 1973).

### IV.

Petitioner next contends that he was subjected to double jeopardy by being retried after the first jury was unable to agree upon a verdict. It is his position that the fifth amendment compelled the trial court to dismiss the charges against him after the first jury was discharged.

█ As observed by the Michigan Supreme Court, "This objection was not raised in the trial court, the Court of Appeals, or in the application for leave to appeal." *People v. Oliphant, supra,* 399 Mich. at 501, 250 N.W.2d at 455. Accordingly, the doctrine of exhaustion of remedies applies, and this issue is not properly before this Court.

█ Furthermore, the objection is frivolous. It is an established principle of American jurisprudence that the discharge of a jury because of its inability to agree upon a verdict is not a bar to a future trial for the same offense. *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *United States v. Perez,* 9 Wheat. 579, 22 U.S. 579, 6 L.Ed. 165 (1824).

### V.

In his fifth assignment of error, petitioner alleges that he was deprived of his right to an impartial jury representative of a fair cross-section of the community in that 18 to 21 year olds were purportedly excluded from the list of veniremen. He contends that such exclusion constitutes a deprivation of his rights as secured by the sixth amendment.

The Age of Majority Act, which enfranchised persons under the age of 21, became effective in Michigan on January 1, 1972, four months before the commencement of petitioner's second trial. M.C.L.A. § 722.51 et seq., M.S.A. § 25.244(51) et seq. Since Michigan jury lists are compiled annually from voter registration lists, the newly enfranchised members of this age group had simply not yet worked their way onto the jury list by the time of petitioner's trials.

Since this assignment of error was first raised on the first day of petitioner's second trial, months after the basis for the objection had been apparent, the Michigan Supreme Court rejected it as untimely under M.C.L.A. § 600.1354, M.S.A. § 27A.1354, which states in relevant part:

"An objection made at the day of a scheduled trial shall not be considered timely unless the objection, with the exercise of reasonable diligence, could not have been made at an earlier time."

See also, Marlin v. State of Florida, 489 F.2d 702 (5th Cir. 1974).

▮ It is clear that the omission of persons below the age of 21 years from the jury array was not in this situation the result of any invidious or constitutionally impermissible discrimination. It is thus not a basis for granting federal habeas corpus relief. See Anderson v. Casscles, 531 F.2d 682 (2d Cir. 1976); Buchannon v. Wainwright, 474 F.2d 1006 (5th Cir. 1973); Wilson v. Clusen, 421 F.Supp. 599 (E.D.Wis. 1976).

### VI.

Petitioner's final assignments of error allege that the trial court's admission into evidence of testimony concerning three alleged prior rapes, two for which petitioner had been tried and acquitted and one for which no prosecution had been pursued, constituted reversible error. His sixth assignment of error asserts that the admission of evidence of the two previously prosecuted alleged rapes violated the doctrine of collateral estoppel embodied in the fifth amendment's guarantee against double jeopardy. His seventh assignment of error asserts that the admission into evidence of

the three alleged prior rapes violated his fourteenth amendment right of due process by impugning the fundamental fairness of his trial. Since these allegations raise some critical questions, they will be examined in detail.

After the presentation of the prosecution's case in chief and the testimony of the petitioner on his own behalf, the prosecution presented the testimony of three young women, each of whom claimed to have been raped by petitioner. Upon hearing the testimony of these three witnesses in the absence of the jury, the trial court determined that it was admissible under Michigan's prior acts statute, M.C.L.A. § 768.27, M.S.A. § 28.1050, which provides:

In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant.

The substance of the testimony of these three witnesses is set forth in detail by the Michigan Supreme Court in People v. Oliphant, supra, 399 Mich. at 483–88, 250 N.W.2d at 447–49. In essence, the circumstances and details related by each of these three women concerning her alleged rape by Mr. Oliphant were strikingly similar to those of each other and the complainant in the instant case. All four alleged rapes occurred within a five month period and involved white, college age women approached in public by Mr. Oliphant. Each incident began with a promise of a ride and a friendly conversation on the topics of marijuana and race, followed by a deviation from the expected route, a change in demeanor by petitioner, and participation in

various allegedly unconsensual sexual acts, including intercourse, purportedly under threat of harm.

Before this testimony was presented to the jury, the trial court instructed the jurors on the limited purpose for which it was being introduced, in accordance with the prior acts statute. They were specifically instructed that the witnesses' testimony could not be used to show guilt of other crimes, a criminal character, or a propensity to rape, and they were fully advised that petitioner had been previously acquitted on charges of rape filed by two of these women. These limiting instructions were repeated by the prosecutor in his closing argument and by the trial court in its charge to the jury.

In his sixth assignment of error, petitioner contends that the admission of the testimony of the two witnesses for whose alleged rapes he had previously been tried and acquitted violated his fifth amendment guarantee against being subjected to double jeopardy. Relying upon the doctrine of collateral estoppel as enunciated by the Supreme Court in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) and extended by the Fifth Circuit in *Wingate v. Wainwright,* 464 F.2d 209 (5th Cir. 1972) and *Blackburn v. Cross,* 510 F.2d 1014 (5th Cir. 1975), petitioner maintains that the state improperly attempted to relitigate the issue of consent although it was legally foreclosed from doing so.

In *Ashe,* the Supreme Court overturned the robbery conviction of a participant in a card game which was obtained after he had been acquitted of robbing another player in the same game. Since the second prosecution was identical to the first in all aspects with the exception of the named victim, the Court held that the state was precluded from relitigating the already determined issue of defendant's nonparticipation in the robbery.

The factual situation in *Ashe* is distinguishable from that of the case *sub judice.* The second trial in *Ashe* arose from the same incident and involved the identical issue of defendant's alleged participation in the robbery. The disputed testimony in this case, however, related to entirely different incidents and involved separate issues. The crucial issue in this action was complainant's consent or nonconsent, an issue never before adjudicated and in no way affected by the prior determination of two other juries that petitioner was not criminally culpable for distinct incidents involving two other women. Accordingly, the doctrine of collateral estoppel as articulated in *Ashe* does not preclude the use of this testimony. As stated by Judge Holloway of the United States Court of Appeals for the Tenth Circuit:

> "Since it is clear that different times and transactions were involved, a rational jury could have grounded its verdict on an issue other than that which the defendant seeks to foreclose from consideration, and thus collateral estoppel would not apply."

> *United States v. Addington,* 471 F.2d 560, 567 (10th Cir. 1973).

The testimony of the two other alleged victims of petitioner did not violate the doctrine of collateral estoppel because it was not offered for the purpose of relitigating any previously determined issues, as the jury was repeatedly reminded. Rather, it was offered for the sole purpose of demonstrating that petitioner had a system, scheme, or plan tending to show his motive or intent, namely to engage in sexual relations with the women he picked up. The determination of the previous juries that the complainants in those situations had consented and thus were not raped decided nothing with respect to the nonconsent by the complainant in this case.

The furthest extension of the doctrine of collateral estoppel has occurred in the United States Court of Appeals for the Fifth Circuit. In *Wingate v. Wainwright,* 464 F.2d 209 (5th Cir. 1972), the petitioner was convicted of robbery of a small store after the state trial court admitted evidence of his involvement in four other robberies, although he had previously been tried and acquitted in two of them. Holding that the prosecution had improperly attempted to relitigate an issue already determined in

the prior prosecutions, the Fifth Circuit overturned the conviction.

In *Blackburn v. Cross,* 510 F.2d 1014 (5th Cir. 1975), the Fifth Circuit reasserted this interpretation of the doctrine of collateral estoppel and permitted its application retroactively. It held that the admission, in petitioner's trial for breaking and entering and unlawful assault and attempted crime against nature, of testimony of two alleged prior victims, one of whose complaints had resulted in petitioner's trial and acquittal, for purposes of buttressing complainant's identification, was harmful error requiring reversal.

No other Circuit has accepted the Fifth Circuit's extension of collateral estoppel, and it is not binding upon this Court. However, even assuming the applicability of the Fifth Circuit rule, the instant case is factually distinguishable from *Wingate* and *Blackburn.*

· In petitioner's state court trial, the evidence of his prior alleged rapes was not introduced to relitigate the ultimate issue of consent in the cases in which he was acquitted. Rather, it was introduced solely and specifically to show that petitioner followed a certain scheme or plan in which certain events preceded intercourse. This issue of the orchestration of events to give the appearance of consent, regardless of whether or not consent was in fact given, was never previously litigated. See *People v. Oliphant, supra,* 399 Mich. at 498–99, 250 N.W.2d at 454.

The striking similarity in approach employed by petitioner, as testified to by his alleged victims, arose from a unique and identifiable plan or system. In contrast, the prior alleged robberies in *Wingate* evidenced no such plan but appear to have been introduced merely to support the allegation of a general course of conduct. The purpose of the prior acts testimony in *Blackburn* was not to demonstrate orchestration but rather to establish identity, a matter previously litigated.

Further crucial distinctions between *Wingate-Blackburn* and the instant case lie in the conduct of the prosecutor and the degree of constraint imposed by the trial

court. In both *Wingate* and *Blackburn,* the Court of Appeals quoted with disapproval the prosecutor's closing arguments to the jury and concluded that they confused the issues before them with those previously determined in the prior actions. *Blackburn v. Cross, supra,* 510 F.2d at 1019–20, n. 4; *Wingate v. Wainwright, supra,* 464 F.2d at 210–11.

In contrast, in the instant action the jury received appropriate limiting instructions from the trial court both before the witnesses were called and in the final charge. In his closing argument, the prosecutor in this case carefully reiterated and stressed the limited use which could be made of the testimony of the alleged prior victims. See Trial Transcript, pp. 1066, 1067, 1085, 1086. See also, *People v. Oliphant, supra,* 399 Mich. at 493, 499–500, 250 N.W.2d at 451, 454; *People v. Oliphant, supra,* 52 Mich. App. at 250, 217 N.W.2d at 145.

The doctrine of collateral estoppel does not exclude per se the introduction of evidence of offenses similar to that sought to be proved merely because the petitioner received an acquittal. Rather, it imposes on the court a serious duty to weigh the fact of acquittal in making the determination of admissibility. *United States v. Addington, supra,* 471 F.2d 560, 567, n. 4; *United States v. Burkhart,* 458 F.2d 201, 208 (10th Cir. 1972). If the decisive issue in the last trial was not before the jury in the prior trial or trials, the prior verdict of acquittal does not invoke collateral estoppel. *Turner v. Arkansas,* 407 U.S. 366, 369, 92 S.Ct. 2096, 32 L.Ed.2d 798 (1972); *Hutchings v. Estelle,* 564 F.2d 713, 714, 717 (5th Cir. 1977).

In *Douthit v. Estelle,* 540 F.2d 800 (5th Cir. 1976), the petitioner allegedly abducted a woman in Travis County, Texas, and transported her through two other counties (Hays and Williamson), sexually assaulting her in each. After being tried and acquitted for the alleged rapes occurring in Williamson County, he was tried and convicted for assault with intent to commit rape in Travis County. During the course of each trial the prosecution introduced evidence of

the alleged criminal acts in all three counties.

Affirming the District Court's denial of habeas corpus relief for petitioner, the Fifth Circuit held that the state was not collaterally estopped from trying petitioner on the second charge since the acts were factually and legally separate, being removed from each other by time, distance, and circumstances. In a ·passage relevant to the instant action, Chief Judge Brown stated:

> The assault with intent to commit rape in Travis County and the alleged rape in Williamson County are separate crimes involving separate elements. Specifically, the issue of the consent of the prosecutrix to the assault in Travis County at 11:00 p. m. on September 6, 1969, is a different issue, both in point of law and fact, from the issue of the consent of the prosecutrix to the alleged rapes occurring in Williamson County on the late afternoon of September 7, 1969, following a number of sexual incidents at two locations in Hays County and a short trip to the Austin Municipal Airport.[16] Because

[16] From a strictly legal viewpoint, since each alleged rape constitutes a separate crime under Texas law (see note 14, supra), the issue of prosecutrix's consent to each alleged rape is separate from the issue of her consent to every other alleged rape, even when they occur at one place within a relatively brief time span. As a practical matter, however, when faced with evidence of several alleged rapes occurring at different times and places and under different circumstances, the jury is likely to separate the issues of prosecutrix's consent into categories of time and place of the rape. Since we are to view the record below "in a practical frame," *Ashe v. Swenson, supra,* 397 U.S. at 444, 90 S.Ct. 1189, "with realism and rationality," *id.,* and "by applying conventional idioms to the jurors' deliberations," *Johnson v. Estelle,* [5 Cir., 1975, 506 F.2d 347] *supra* at 352, we view the consent issue from the latter "time-place" viewpoint rather than alone from the strictly legalistic viewpoint of the Texas substantive law concerning rape. Thus, there are in all, four possible issues of consent involved in this case: (i) the consent of the prosecutrix to the initial assault in Travis County, (ii) her consent to the initial alleged rapes in the field in Hays County, (iii) her consent to the subsequent alleged rapes in the motel in Hays County, and (iv) her consent to the final alleged rapes in the motel in Williamson County.

these consent issues are not identical, it was not logically or legally necessary for the first jury (Williamson County charge) by its general verdict of not guilty, to have decided both issues of consent in favor of Petitioner.

In the instant case, the issue at trial was whether the complainant had consented to intercourse with petitioner. This issue was totally separate from the issue of consent by other women, which had been determined in petitioner's favor in the prior trials. Since this testimony was introduced only to show that intercourse with petitioner was preceded by certain common events, it appears that even the Fifth Circuit *Wingate-Blackburn* approach would have allowed its admission.

Since the issue of this complainant's consent had not previously been litigated, and the testimony of the alleged prior victims was introduced not to permit reconsideration of any issues already determined in their trials but solely for the limited purpose of showing orchestration, a fact about which the jury was scrupulously instructed by the trial court, the state was not collaterally estopped from introducing the disputed testimony.

## VII.

In his final assignment of error, petitioner contends that the admission into evidence of these alleged prior rapes, including two for which he had been previously acquitted and one for which no prosecution had been pursued, under the Michigan prior acts statute, impugned the fundamental fairness of his trial in violation of the fourteenth amendment. The essence of this challenge was considered and rejected on fifth amendment grounds in part VI, *supra.*

Petitioner can prevail on his fourteenth amendment claim only if he can show an error of constitutional dimension. *Combs v. State of Tennessee,* 530 F.2d 695 (6th Cir. 1976); *Gemmel v. Buchkoe, supra.* In extended Opinions, both the Michigan Court of Appeals and the Michigan Supreme Court considered the fairness of admitting the testimony of petitioner's alleged prior rape victims pursuant to the prior acts statute and concluded along with the trial court

that its probative value outweighed its possible prejudice. Speaking for the majority of the Michigan Supreme Court, Justice Ryan, a jurist with nearly a decade of experience as a trial judge,[1] declared:

> Concluding, as we do, that the testimony was "material" in compliance with the statute, we decline at this stage to upset the trial court's judgment as to the balance of probative value and prejudicial effect. The facts summarized above exhibit such similarities as to be probative of a plan or scheme. The dearth of evidence on consent, aside from the contradictory testimony of complainant and defendant, make evidence as to the circumstances of the incident particularly important in this case. We are not unmindful of the danger of this type of evidence prejudicing the jury against the defendant. On these facts, however, there is no basis to conclude that the trial judge, who addressed the issue with great care, abused his discretion in concluding that the probative value was not substantially outweighed by the potentially unfair prejudicial effect.

*People v. Oliphant, supra,* 399 Mich. at 494–95, 250 N.W.2d at 451–52 (footnote omitted).

This Opinion was concurred in by Justices Lindemer, Coleman, Williams, and Fitzgerald, a distinguished panel representing a wide array of judicial philosophies.

▄▄ This Court has similarly examined the entire record of petitioner's trial and finds no violation of petitioner's rights under the fourteenth amendment or any other provision of the Constitution. The carefully limited admission of testimony pertaining to the three alleged prior rapes was consistent with both M.C.L.A. § 768.27, M.S.A. § 28.1050 and Rule 404(b) of the Federal Rules of Evidence. *Manning v. Rose,* 507 F.2d 889 (6th Cir. 1974); *United States v. Neal,* 344 F.2d 254 (6th Cir. 1965). It did not impugn the fundamental fairness of petitioner's trial.

## C.  CONCLUSION

The Court has examined all of petitioner's assignments of error in conjunction with the entire record of the trial and concludes that they neither alone nor in combination constitute a deprivation of his constitutional protections or his right to a fundamentally fair trial. Habeas corpus relief is thus not available. 28 U.S.C. § 2254(a). *Rogers v. Peck,* 199 U.S. 425, 26 S.Ct. 87, 50 L.Ed. 256 (1905); *Gemmel v. Buchkoe, supra.* Accordingly, the petition for a writ of habeas corpus is denied, and this action is dismissed.

IT IS SO ORDERED.

---

1.  Justice Ryan has served as instructor on "Evidence" at the National College for State Trial Judges for many years. His effective work in evidence is recognized nationally by trial judges from throughout the country. The undersigned was one of his students in 1971.