**Darrell Gene BLACKBURN, Petitioner-Appellant,**

v.

**Armond CROSS, Chairman and Commissioners, Probation & Parole Commission, State of Florida, Respondents-Appellees.**

No. 74–2333.

United States Court of Appeals, Fifth Circuit.

April 2, 1975.

Rehearing and Rehearing En Banc Denied Aug. 6, 1975.

**1016**

Philip A. Hubbart, Public Defender, Bennett H. Brummer, Stephen N. Lipton, Asst. Public Defenders, Miami, Fla., for petitioner-appellant.

Robert L. Shevin, Atty. Gen., Joel D. Rosenblatt, Stephen V. Rosin, So. Miami, Fla., Asst. Attys. Gen., for respondents-appellees.

Before MORGAN and CLARK, Circuit Judges, and GORDON, District Judge.

LEWIS R. MORGAN, Circuit Judge:

At issue in this case is the retroactivity *vel non* of the principle announced in Wingate v. Wainwright, 464 F.2d 209 (5th Cir. 1972). We believe that the weight of precedent supports the retroactive application of the *Wingate* principle, and we therefore reverse the district court.

I.

On January 19, 1967, the petitioner was charged in an amended information with (1) breaking and entering a dwelling and unlawfully assaulting a person therein, and (2) attempted crime against nature. The petitioner entered a plea of not guilty and the trial by jury commenced.

At trial, Rosemarie Fletcher identified the petitioner as the person who broke into her apartment and attempted to sexually assault her. She had seen only the profile and back of her assailant, but she furnished police with a description of the assailant and she identified the petitioner in a line-up. In addition to Fletcher, the state presented the testimony of two additional women, Catherine Austin and Patricia McCune, both of whom lived in the same apartment complex as Fletcher. Austin and McCune identified the petitioner as the assailant who had likewise broken into their apartments and had sexually assaulted them.

The petitioner had previously been acquitted after a trial by jury of the assault on McCune. At trial for the assault on Fletcher, McCune's testimony was admitted over petitioner's objection as evidence of a similar offense tending to establish the identity of the petitioner as Fletcher's assailant.

Petitioner testified in his own behalf and presented an alibi defense. In addition to the three positive identifications of the petitioner, the state presented evidence that four fingerprints of one hand and the thumb print of the other hand lifted from the jalousie window slats of the kitchen door of Fletcher's apartment (where the breakin occurred) were those of the petitioner.

The guilty verdict was followed by an unsuccessful direct appeal in which the petitioner claimed that McCune's testimony was improperly admitted into evidence. Blackburn v. State, 208 So.2d 625 (Fla.App.1968). Defendant's petition for a writ of habeas corpus—alleging that the holding in *Wingate* should be retroactively applied to his trial, and, hence that McCune's testimony was inadmissible—was subsequently denied by the district court.[1]

II.

The collateral estoppel notion, upon which petitioner relies, has been applied in the area of criminal law only recently.

In Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) a feder-

1. Petitioner was paroled on May 1, 1973, from the sentence presently under attack.

al habeas corpus petitioner attacked his state conviction for the robbery of one of six men engaged in a poker game. The petitioner had previously been acquitted of the robbery of another one of the same poker players. The single issue in dispute at both trials was whether the petitioner had been one of the robbers. The Supreme Court held that the federal notion of collateral estoppel precluded relitigation of the petitioner's participation in the robbery and that this rule is embodied in the double jeopardy clause of the Fifth Amendment.

In Wingate v. Wainwright, 464 F.2d 209 (5th Cir. 1972) this Circuit significantly expanded the *Ashe* holding. In *Wingate* a federal habeas corpus petitioner attacked his conviction for the robbery of a small store. At his trial, the state introduced evidence tending to show that Wingate had committed four additional robberies; he had been tried for and acquitted of two of these robberies. In his closing remarks there was

heavy reliance by the prosecutor on the evidence of additional robberies.

This court held that *Ashe* does not merely bar a subsequent state prosecution, the maintenance of which depends upon a successful relitigation of a fact issue which had previously been settled adversely to the state by an earlier acquittal. Rather, the double jeopardy clause, which includes the doctrine of collateral estoppel under *Ashe*, prohibits the state from relitigating, for any purpose, an issue which was determined in a prior prosecution of the same party. Hence, there is no difference between relitigating an ultimate fact or an evidentiary fact; relitigation of either is prohibited.

### III.

Blackburn's trial occurred before our decision in *Wingate*. Since the facts before us are virtually identical to those of *Wingate*, we must determine whether *Wingate* is to be applied retroactively.[2]

2. Petitioner contends that the *Wingate* court's application of the modified *Ashe* principle to a conviction that became final prior to the date of the *Ashe* decision is indicative of this court's view of the retroactivity question. That is, petitioner contends that this court applied the collateral estoppel rule retroactively in reversing the denial of habeas corpus relief to Wingate.

While there is some dicta suggesting that a review of a denial of habeas corpus relief effectively enunciates a retroactive rule, *see* Johnson v. New Jersey, 384 U.S. 719, 729, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Williams v. Estelle, 500 F.2d 206 (5th Cir. 1974), we need not decide that question because we find that a retroactive application of the *Wingate* rule is required by the Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) analysis.

Petitioner also contends that Robinson v. Neil, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973) mandates a retroactive application of *Wingate*. In *Robinson* the Supreme Court held that Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970) which barred a state and municipal prosecution for the same act or offense, fully retroactive. The court indicated that "[t]he prohibition against being placed in double jeopardy is . . . not readily susceptible of analysis under the *Linkletter* line of cases." Robinson v. Neil, *supra*, 409 U.S. at 508, 93 S.Ct. at 878.

We believe that the Supreme Court's retroactive application of double jeopardy principles, *see* Robinson v. Neil, *supra*, lends support to the conclusion that the *Wingate* decision should be retroactively applied. *Cf.* Vaccaro v. United States, 461 F.2d 626, 632–33 (5th Cir. 1972). However, we do not believe that *Robinson* is entirely dispositive of the question before us, for the rationale of *Robinson* was based upon the fact that double jeopardy principles normally preclude a new trial entirely, while procedural guarantees merely relate to the method of conducting trials:

> The guarantee against double jeopardy is significantly different from procedural guarantees held in the *Linkletter* line of cases to have prospective effect only. While this guarantee, like the others, is a constitutional right of the criminal defendant, its practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial. A number of the constitutional rules applied prospectively only under the *Linkletter* cases were found not to effect the basic fairness of the earlier trial, but to have been directed instead to collateral purposes such as the deterrence of unlawful police conduct, Mapp v. Ohio, *supra*. In *Waller*, however, the Court's ruling was squarely directed to the prevention of the second trial's taking place at all, even though it might have been conducted with a scrupulous regard for all of the constitu-

In Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Supreme Court held that the Constitution neither prohibits nor requires retroactive application of new decisions. In considering the retroactivity of subsequent rulings, the Court resolved to look at the prior history of the rule in question, its purpose and effect, and whether retrospective effect furthers or retards its operation. *Id.* at 626, 85 S.Ct. 1731.

Shortly thereafter, the standards for retroactive application were codified in a three-pronged test:

> (a) The purpose to be served by the new standards, (b) the extent of reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of the new standards. Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967).

■ "Foremost among these factors is the purpose to be served by the new constitutional rule." Desist v. United States, 394 U.S. 244, 249, 89 S.Ct. 1030, 1033, 22 L.Ed.2d 248 (1969). Substantial consideration should be given the last two factors "only when the purpose of the rule in question [does] not clearly favor either retroactivity or prospectivity." *Id.* at 251, 89 S.Ct. at 1035; *see* Michigan v. Payne, 412 U.S. 47, 55, 93 S.Ct. 1966, 36 L.Ed.2d 736 (1973); United States v. Scott, 425 F.2d 55, 58 (9th Cir. 1970) (en banc). Moreover,

> [w]here the major purpose of a new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truthfinding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good faith reliance by state or

federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances. Williams v. United States, 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971) (plurality opinion).

■ Hence, retroactivity has been denied where a new rule serves a broad social policy, Williams v. Estelle, 500 F.2d 206, 208 (5th Cir. 1974), where the rule does not go to the fairness of the trial, or where the flaw in the fact-finding process is either of secondary importance or of infrequent occurrence, United States v. Scott, 425 F.2d 55 (9th Cir. 1970) (en banc) and cases cited therein. But where a new rule is fashioned to correct a serious flaw in the fact-finding process and therefore goes to the basic integrity and accuracy of the guilt-innocence determination, retroactive effect is required. United States v. Scott, *supra,* at 58 and cases cited therein; *see* Williams v. Estelle, *supra,* 500 F.2d at 208.

We must therefore determine the purpose behind the *Wingate* rule and whether this purpose relates to the integrity of the fact-finding system. The *Wingate* case, of course, held that the double jeopardy clause, which includes the doctrine of collateral estoppel, prohibits a state from relitigating any issue which was determined in a prior prosecution of the same party. The purpose of this rule is bound up in the whole complex of values that the guarantee against double jeopardy represents. *Cf.* Tehan v. Shott, 382 U.S. 406, 414, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966).

■ The policy underlying the prohibition against double jeopardy

> is that the State with all its resources and power should not be allowed to

---

tional procedural rights of the defendant. Robinson v. Neil, *supra,* 409 U.S. at 509, 93 S.Ct. at 878.

While the *Wingate* rule is rooted in the principle of double jeopardy, its operation merely precludes the introduction of certain disfavored evidence. In light of the *Robinson* rationale it would be unreasonable for us to

conclude that the Supreme Court in *Robinson* was addressing itself to the exclusion of evidence of prior crimes and, hence, intended *Robinson* to apply to procedural guarantees based upon the principle of double jeopardy. We therefore prefer to rest our decision upon the *Linkletter* line of cases.

make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. United States v. Jorn, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971).

■ In order to protect "a man who has been acquitted from having to 'run the gantlet' a second time," *Ashe* incorporated the rule of collateral estoppel into the guarantee of double jeopardy. Ashe v. Swenson, 397 U.S. 436, 446, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970). *Wingate* expanded this notion to include evidentiary as well as ultimate facts because

> [i]t is fundamentally unfair and totally incongruous with our basic concepts of justice to permit the sovereign to offer proof that a defendant committed a specific crime which a jury of that sovereign has concluded he did not commit. Otherwise a person could never remove himself from the blight and suspicious aura which surround an accusation that he is guilty of a specific crime. Wingate v. Wainwright, 464 F.2d 209, 215 (5th Cir. 1972).

The *Wingate* court indicated that this evidence of prior acquittals was "prejudicial" and, hence, admission of such evidence could certainly influence the integrity of the fact-finding system.[3] We therefore find that the *Wingate* rule warrants retroactive application.

## IV.

■ The state argues that any error made in Blackburn's trial was harmless, but petitioner responds that it would be inappropriate to apply the "harmless error anlaysis" to a double jeopardy claim. We need not decide whether a collateral estoppel claim is susceptible to harmless error analysis, for we find that the error committed in this case could not be adjudged harmless even if the appropriate constitutional standards were applied.

Recent Supreme Court decisions regarding "harmless constitutional error" inquire as to "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). Only if the court can declare with confidence "beyond a reasonable doubt" that such a possibility is excluded by the record can it declare a constitutional error harmless. *Id.* at 24, 87 S.Ct. 824; *see* Schneble v. Florida, 405 U.S. 427, 430, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Null v. Wainwright, 508 F.2d 340 (5th Cir. 1973); Vaccaro v. United States, 461 F.2d 626, 637–38 (5th Cir. 1972).

The evidence against Blackburn was quite convincing. However, in his closing argument the prosecuting attorney disparaged the testimony of Fletcher (the alleged victim in the case *sub judice*) and relied upon the combined effect of all three identifications to establish reliability.[4] Under these circum-

---

3. *See* Vaccaro v. United States, 461 F.2d 626, 633 (5th Cir. 1972): "We distill from this whole body of cases the Court's value judgment that people . . . are not to be punished by procedures which present 'a serious risk that the issue of guilt or innocence may not have been reliably determined,' or which produce a 'clear danger of convicting the innocent.' Practices, procedures or statutes which present the probability of risk of such consequences must be eradicated and the surest way is to prescribe retroactivity" (footnotes omitted).

4. In his closing argument, the prosecuting attorney said:

> Where is your reasonable doubt about Catherine Austin identifying this man? Rosemarie Fletcher seeing his profile, the thinning hair in the back of the head, possibly her alone I would hate to convict this man on that kind of identification [sic]. I would be loathed too [sic], even in the case of the kind of testimony when you are trying a man by [sic] the heinous crime, but we are trying him because he committed a crime against the laws of the State of Flori-

stances it is impossible for us to conclude that the erroneous admission of McCune's testimony was harmless beyond a reasonable doubt.

Reversed and remanded with directions to issue the writ, subject to the state's right to re-try the defendant.

da. So that Rosemarie Fletcher, with the profile, with the thinning hair, this is very weak, but Catherine Austin, now we've got the law of probability working. Take that again. It gets better, much better. Pat McCune. Now we've got an identification that is almost nailed down. We've got three sensible girls standing up there and never flinching, never turning an eye. Are you going to kick that away like it was trash and rubbish, that kind of identification?