**Roy STUART, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 51987.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 8, 1978.

Kenneth A. Back, Amarillo (court appointed on appeal), for appellant.

Tom A. Curtis, Dist. Atty., and Bruce P. Sadler, Asst. Dist. Atty., Amarillo, for the State.

### OPINION

ROBERTS, Judge.

This is an appeal from a conviction for aggravated rape. Punishment was assessed by the jury at 99 years' confinement in the Texas Department of Corrections.

The sufficiency of the evidence is not challenged. The prosecutrix testified that appellant picked her up while she was hitchhiking, pulled off the main highway, and threatened to kill her if she did not perform oral sodomy upon him. She further testified that after this occurred he raped her twice during which he choked her until she became unconscious. When she regained consciousness she was allowed to dress and appellant then drove her back to the highway where she got out of the car.

Appellant admitted having sexual intercourse with the prosecutrix, but interposed the defense of consent.

Appellant urges that the trial court reversibly erred in admitting over his objection evidence concerning two prior occurrences involving alleged rapes. The appellant was prosecuted for the first alleged rape and acquitted by a jury. He was not prosecuted for the second alleged rape.

Appellant argues that the admission of the occurrence which resulted in an acquittal violates his federal and state constitutional right to be free from double jeopardy.

**182**

In *McDowell v. State*, 142 Tex.Cr.R. 530, 155 S.W.2d 377 (1941), the defendant was prosecuted for the possession of intoxicating liquor for the purpose of sale in a dry area. This Court held that it was reversible error to admit over the defendant's objection a police officer's testimony that he had bought a pint of whiskey from the defendant two months earlier, where the officer admitted that he filed a complaint against the defendant based upon the alleged prior sale and that a trial following this complaint resulted in the defendant's acquittal. In reversing defendant's conviction, this Court stated that:

"It has been the consistent holding of this court that upon a trial for possessing liquor for the purpose of sale the State may prove sales of such liquor, if not too remote, upon the issue of the purpose for which the liquor was possessed. (Citations). However, we are not aware of any case where evidence of a claimed prior sale has been admitted over a judgment of acquittal of the particular act charged. The harm here is apparent. The State made a case where it was entitled to and received the benefit of the prima facie presumption of the purpose of sale from the quantity of liquor in appellant's possession. He undertook to combat the presumption by his claim that he had it for personal use. The issue was sharp. The State then sought the benefit of a claimed sale of which appellant had been found not guilty. We think error was committed in admitting the evidence." *Id.*, 155 S.W.2d at 378.

As in *McDowell*, the issue here is sharp. The prosecutrix alleged rape and the appellant defended on consent. We feel that any application of an exception to the rule against admission of extraneous offenses, *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972), must necessarily be to an occurrence which has not already been conclusively established by a verdict of acquittal to have not been an extraneous offense in the first place. The prosecution should not be allowed an exception when they have failed to come within the ambit of the general rule. *See, Ashe v. Swenson,*

397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *Blackburn v. Cross*, 510 F.2d 1014 (5th Cir.) *reh. en banc denied*, 517 F.2d 464 (1975); *Wingate v. Wainwright*, 464 F.2d 209 (5th Cir. 1972).

Since we reverse appellant's conviction because of the erroneous admission of the prior alleged rape which resulted in appellant's acquittal, we do not discuss the error, if any, in the admission of the prior alleged rape for which the appellant was not prosecuted. However, in the event of retrial, we invite the trial court's attention to our decisions in *Caldwell v. State*, 477 S.W.2d 877 (Tex.Cr.App.1972) and *Jackel v. State*, 506 S.W.2d 229 (Tex.Cr.App.1974).

The judgment of the trial court is reversed and the cause is remanded.

VOLLERS, J., not participating.

DOUGLAS, Judge, dissenting.

Relying on *McDowell v. State*, 142 Tex. Cr.R. 530, 155 S.W.2d 377 (1941), the majority holds that an otherwise admissible extraneous offense or transaction is rendered inadmissible by appellant's acquittal of the offense in a prior trial. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), requires that *McDowell* be overruled and that the judgment in the instant case be affirmed.

The testimony of the prosecutrix in the instant case shows that she was hitchhiking through Amarillo on February 24, 1975. Appellant picked her up on a highway north of town and then continued to drive north. After a few minutes of normal conversation he pulled off the main highway where a struggle ensued. He threatened to kill her and forced her to remove her clothes and perform oral sex on him. Thereafter, he raped her twice. During intercourse he choked her until she lost consciousness. Following the attack, he apologized and allowed her to dress. He drove her back to the highway where she got out of the car.

At the guilt-innocence stage of the trial, the State introduced over objection evidence that appellant had committed two

other rapes. The first of such offenses was alleged to have been committed on January 20, 1974. The victim, C_____ W_____, testified in the instant case that she was walking down an Amarillo street when appellant approached and forced her into his car at gunpoint. After he threatened to kill her, she complied with his order to undress. Thereafter, he forced her to commit sodomy, raped her and choked her until she lost consciousness. Later he permitted her to get dressed and get out of the car.

The second offense was allegedly committed in November of 1974. The victim in that case, J_____ W_____, testified in the present case that she was a friend of appellant's wife. On the date of that offense appellant came to her home and entered with her consent. After they talked and watched television, he threatened to kill her. He started choking her and told her to undress. Appellant ordered her to commit sodomy on him but she refused. He then raped her and choked her until she lost consciousness. Appellant later apologized and said he did not intend to hurt her.

Appellant testified and admitted having had sexual intercourse with the prosecutrix. He stated that no force was used and that she consented.

He further testified that C_____ W_____ also voluntarily engaged in sexual intercourse with him. The record shows that he was tried for that offense and acquitted by a jury.

Appellant was not prosecuted for the rape of J_____ W_____. In this connection, he denied in the present case that he had had intercourse with her in November, 1974.

In *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the Supreme Court of the United States held that the Fifth Amendment guarantee against double jeopardy is enforceable against the States through the Fourteenth Amendment. The question in this case is whether the court violated the double jeopardy provisions of the United States and Texas Constitutions by admitting into evidence C_____ W_____'s testimony.

In *Ashe v. Swenson*, three or four armed men robbed six poker players in the home of one of the victims. The accused was charged in separate counts with the robbery of each of the poker players. He went to trial on one count and was acquitted as a result of insufficient evidence. He was subsequently tried for the robbery of a different player. The only rationally conceivable issue in dispute was Ashe's identity as one of the robbers.

Holding that the guarantee against double jeopardy embodies the doctrine of collateral estoppel, the Court determined that the doctrine precluded the second prosecution and reversed the conviction. The Court defined collateral estoppel to mean "simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S., at 443–444, 90 S.Ct., at 1194, 25 L.Ed.2d, at 475. The Court then cautioned that this "rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th Century pleading book, but with realism and rationality." *Id.*

Unlike Ashe, appellant was not prosecuted for an act after being acquitted for a contemporaneous act arising out of the same alleged criminal episode. The alleged rapes of C_____ W_____ and J_____ W_____ were wholly separate occurrences. Thus, the issue which the State relitigated, whether those rapes were the result of a common scheme or design, was an evidentiary issue and not an issue of ultimate fact. The concept of collateral estoppel as defined in *Ashe* presented no bar to the introduction of the extraneous offense of which appellant was acquitted.

In effect, *McDowell* and today's decision prohibit the relitigation of any fact with reference to prior criminal conduct of which the defendant was acquitted. *Ashe* expressly states that the only evidence that is precluded is evidence of fact issues which necessarily were determined against the prosecution on the prior trial.

The majority attempts to support its reliance on *McDowell* by citing *Ashe*; *Blackburn v. Cross*, 510 F.2d 1014 (5th Cir.) *rehearing and rehearing en banc denied*, 517 F.2d 464 (1975); and *Wingate v. Wainwright*, 464 F.2d 209 (5th Cir. 1972). *Ashe* is contrary to the result reached by the majority for the reasons previously stated. *Wingate* was retroactively applied in *Blackburn*. Although we are not bound by decisions of the lower federal courts, see *Pruett v. State*, 463 S.W.2d 191 (Tex.Cr.App.1970), *Wingate* will be discussed in view of the constitutional significance of the issue before us.

In that case, a federal habeas corpus petitioner attacked his conviction for a robbery in a store. At his trial, the state introduced evidence tending to show that Wingate had committed four other robberies; he had been tried for and acquitted of two of them. On appeal, the United States Fifth Circuit Court of Appeals significantly expanded the holding in *Ashe* and held that the double jeopardy clause prohibited the state from relitigating, for any purpose, any issue which had been determined in a prior prosecution of Wingate. Hence, under the *Wingate* holding, relitigation of either an ultimate fact or an evidentiary fact is barred.

The reasoning of the Court in *Wingate* cannot withstand thoughtful analysis. The Court stated that the evidence of the former robberies was offered to prove "some element" of the primary offense. This was incorrect.

The record in that case reflects that the prosecution was trying to prove only the ultimate facts of prior robberies as distinguished from showing the systematic conduct of the petitioner during those prior occurrences. The Court compounded its error by apparently concluding that the evidence would have been admissible had it not been for the acquittals.

Evidence of prior *conduct* of a criminal nature is admissible, in certain circumstances, to show motive, intent, a common plan, scheme or design, etc. See *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972). But evidence that defendant had *committed* another similar crime, without more, is not admissible at the guilt-innocence stage any more than is evidence that he has been convicted of another crime (except where permitted for impeachment purposes). Evidence of prior criminal conduct is not admissible because it shows that another offense was committed; *it is admissible despite the fact that it may show the commission of another offense.*

*Wingate*, therefore, erroneously expanded the *Ashe* decision "beyond double jeopardy, beyond collateral estoppel, and beyond ultimate fact to bar the use of probative evidence about a wholly separate event." *Blackburn v. Cross*, supra, (Clark, J., dissenting to the denial of the petitions for rehearing and rehearing en banc). Before the decision reached in *Wingate*, collateral estoppel had not been afforded so vast a scope in any civil or criminal case. That case is not acceptable authority for today's decision, and unless the Supreme Court of the United States rules otherwise, we should not follow it.

The controlling facts in *People v. Oliphant*, 399 Mich. 472, 250 N.W.2d 443 (1976), are identical to those in the case at bar. There, Oliphant was convicted of forcible rape and gross indecency. Evidence was introduced at his trial concerning three prior incidents in which he had allegedly raped other women. Two of the victims brought criminal charges, but he was acquitted on both occasions.

Oliphant contended on appeal that the collateral estoppel principle barred the receipt of evidence concerning the alleged extraneous offenses. He relied on *Ashe v. Swenson*, *Wingate v. Wainwright* and *Blackburn v. Cross*. The Michigan Supreme Court rejected the contention and stated:

".   .   . We read *Ashe* in the context of the facts of which it was based as holding that an issue of ultimate fact litigated in favor of defendant in one trial court cannot be relitigated by the government in subsequent trial for an offense arising out of the same transaction.

"Collateral estoppel as embodied in the Fifth Amendment does not preclude the

receipt of testimony material to establishing a crime simply because it was offered and received in a prior trial on a totally distinct matter where defendant was acquitted. . . .

". . . *Ashe* held that collateral estoppel was incorporated in the Fifth Amendment's guarantee against double jeopardy. *Double Jeopardy arises when there is relitigation of the same facts from the same transaction.* There is no double jeopardy in the instant case." (Emphasis added.) 250 N.W.2d, supra, at 453–54.

The court then held that the evidence satisfied the state's "like conduct" statute because it showed a plan or scheme to orchestrate the events surrounding the rapes whereby the victims could not show nonconsent.

In the instant case, the trial court stated in its charge that the two other alleged offenses were admitted for the purpose of showing motive, scheme or a course of conduct toward a class of persons. The prosecutrix was a "hippie" hitchhiker. C_____ W_____ was picked up as she was walking alone down a street. J_____ W_____, a friend of appellant's wife, had never been married but was four months pregnant when she was raped. She had been a member of the Jokers Motorcycle Club and had a felony theft conviction (which was subsequently reversed).

In each instance, appellant engaged in normal conversation with the victim before he raped her. He forced two of the women to commit oral sex on him and attempted to force the third to commit this act. He ordered each of the women to undress herself so that he would not have to tear or rip her clothes. In each case he choked the woman into unconsciousness. When each regained consciousness he forced her, on fear of death or bodily injury, to engage in sexual intercourse with him.

The evidence in all three instances tends to show a plan or scheme to prevent his conviction by attacking vulnerable, young women whose credibility could be challenged. Thus, the evidence of the other alleged rapes was highly probative and outweighed any prejudice to appellant which resulted from its admission.

The only ultimate fact which was litigated in this case was whether appellant raped the prosecutrix on February 24, 1975. The testimony of C_____ W_____ was introduced for the sole purpose of strengthening the evidence of the instant offense charged by showing a plan, scheme or system.

This reasoning is analogous to the situation under the former penal code where proof was required that a principal was guilty before an accomplice could be convicted. The acquittal of the principal did not bar a subsequent prosecution of the accomplice even though the guilt of the principal had to be proved. See *Rozell v. State,* 502 S.W.2d 16 (Tex.Cr.App.1973). Different juries reach different results on the same facts. Under the majority's reasoning in this case we would be compelled to hold that no issue raised in the principal's trial could be relitigated and, thus, that the accomplice could never be prosecuted.

The numerical weight of authority opposes the majority's position. Anno: Evidence—Other Offense—Acquittal, 86 A.L. R.2d 1132, 1135 (1962). *McDowell v. State* is no longer viable in light of *Ashe v. Swenson.* As a result we should overrule *McDowell* and hold that the acquittal of a defendant of another offense does not render proof of that offense inadmissible at a later criminal trial where such proof is otherwise competent. The fact of the defendant's acquittal goes to the weight of the evidence, not to its admissibility; thus, defendant should be permitted to prove the acquittal. See *United States v. Burkhart,* 458 F.2d 201 (10th Cir. 1972); and *State v. Smith,* 532 P.2d 9 (Or.1975).

Reference to the express language of the federal constitution, ". . . nor shall any person be subject *for the same offense* to be twice put in jeopardy of life or limb", best demonstrates the error of today's decision.

The judgment should be affirmed.

TOM G. DAVIS and DALLY, JJ., join in this dissent.