**Freddie Lee DEDRICK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 60184.**

Court of Criminal Appeals of Texas, Panel No. 1.

April 1, 1981.

Rehearing Denied En Banc Nov. 25, 1981.

---

George E. Gilkerson and John J. C. O'Shea, Lubbock, for appellant.

Alton R. Griffin, Dist. Atty., Cindy L. Miller, Asst. Dist. Atty., Lubbock, Robert Huttash, State's Atty., Austin, for the State.

John T. Montford, Dist. Atty., Jim B. Darnell, Asst. Dist. Atty., Lubbock, Robert Huttash, State's Atty., Austin, for the State on rehearing.

Before ONION, P. J., and ROBERTS and ODOM, JJ.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for aggravated robbery. Punishment was assessed at twenty years.

In his first ground of error appellant complains of the admission of the testimony of certain witnesses. He contends that part of the testimony of these witnesses should have been excluded because that testimony had previously been rejected by the jury at a prior trial for a different offense, at which appellant was acquitted. Cf. *Stuart v. State*, Tex.Cr.App., 561 S.W.2d 181. He argues that admission of their testimony violated the collateral estoppel doctrine, citing *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

When the State called the first witness to which objection is now raised, the jury was removed and extensive objections were made:

"DEFENDANT'S MOTION TO EXCLUDE TESTIMONY

"THE COURT: All right. State all your objections on your bill.

"MR. O'SHEA: All right. Comes now the Defendant, Freddie Lee Dedrick, Defendant in the above entitled and numbered cause, and files this his objection to the proposed testimony of Glenda Wright, Lt. Ray Huffman, Sgt. Park, George White, Joe Nevarez, Teddy Daniels, and Glenn Johnson, Harris Clinton—

"THE COURT: Clanton.

"MR. O'SHEA: —James Ashmore, Don Funk, and Glenn Edwards, as it relates to the gun which has been marked as State's Exhibit 9, but which has not been introduced as yet.

"In connection with this objection, Defendant predicates his objection to the testimony as such testimony conforms to the testimony heretofore made, heretofore given in the cause of 17,603, styled

Freddie Lee Dedrick vs. —State of Texas vs. Freddie Lee Dedrick, wherein Freddie Lee Dedrick is charged with an alleged armed robbery, or aggravated robbery, occurring on or about January 17th, 1977, from the material possession and control of property of Don Funk; in that such testimony, that is going to be given by these people, including Glenda Wright, the present witness on the stand, will be a presentation before this jury as to identity, and as to the commission of the alleged crime, as set forth in Cause No. 17,603, styled State of Texas vs. Freddie Lee Dedrick, in which cause, trial being heretofore had on such cause on or about August 3rd and 4th, 1977, with the Defendant being acquitted of the offense that occurred on or about such date; being acquitted of the offense by a jury of his peers.

"In this regard, Defendant would show that the offenses charged in Causes No. 17,602 and 17,603, alleged armed robbery—aggravated robberies, occurring on or about—all right, that as to Cause No. 17,602 [sic] alleging aggravated robbery occurring on or about January 15th, which is the matter under consideration today; and 17,602, alleging that an aggravated robbery occurred on or about January 17th, 1977, and in this regard, such indictments were available, and were returned on the same date, that being February 9th, 1977, and at such time, the prosecution had available to them the right to try either case without a bar being raised as to the adjudication of not guilty.

"The Defendant would submit, most respectfully, that as to the identity of the gun, the use of the gun, in connection with this offense, of which he is on trial this date for, as set forth in Cause No. 17,603; will be an attempt to hold him responsible for his conduct, as set forth in Cause No. 17,602, and it is an attempt for a jury to pass upon the validity of the operative fact, or facts, in such cause, 17,602, once again, which destroys the efficacy, the legitimacy, and the right and propriety of the constitutional guarantee against being tried for the same offense twice.

"Defendant would state, most respectfully, that the same evidence was considered by the jury in Cause 17,602, when trial was had before this Honorable Court on August 3rd and 4th of 1977; and to rehash it at this time is to do violence, and to deny this Defendant his rights not to be tried twice for the same offense, as guaranteed under the Federal and State Constitutions, and the operative laws, and statute laws of the State of Texas; all of which laws we call upon as prohibiting the prosecution in this cause.

"Defendant would say, most respectfully, in connection with this, and in support of such testimony, as offered, that will be done, we call upon— we ask the Court to grant us, if this case is appealed, that the Court include, and that the Court take judicial knowledge of the previous record of the trial and the testimony elicited, during the course of the trial, in which this Honorable Court, the same person, and the Presiding Judge, heard this trial, and that the Court, in this matter, for the purpose of this, take judicial notice of the import, the content, and the extent of the testimony heretofore given by the people that are expected to be called in this case, and that were previously called in the preceding cause of 17,602, back in August of last year, and that the record stand for itself; that it is, once again, an attempt on the part of the State to hold this man accountable for the same course of conduct, the same set of events, of which he has been absolved and held guiltless by a jury of his peers, after a due and regular trial, with no attack upon the jurisdiction of such trial, or a jury, in rendering a fair and impartial verdict upon the facts in that case.

"The Defendant would say, most respectfully, that the testimony of these witnesses, which I will not go into in detail, due to the lengthiness, unduly, for the purpose of this objection, will be the same import, the same nature and extent, for the purpose of identity of this gun,

for the purpose of collaterally asking this jury to make a different finding of fact, or a different judgment upon an operative fact that was necessarily found not to be true by a preceding jury.

"We predicate this motion of objection to her testimony upon the fact that—and the other witnesses that we have named, upon the fact that such testimony will be directly—it will be directly—it will directly cause a jury—or give the jury the opportunity to pass a different judgment upon the operative facts upon which the Defendant was found not guilty in the preceding trial, which is Cause No. 17,602, styled the State of Texas vs. Freddie Lee Dedrick, wherein he was charged with aggravated robbery occurring on or about January 17th, 1977, from the person and ownership of Don Funk.

"We wish to make known this objection in detail, and have such objection and bill of exception, if the Court should overrule our objection to this testimony, and we ask that we have a running bill, predicated upon the denial of due process of law, denial of effective assistance of counsel, whereby counsel—effective assistance of having adjudicated it once, and the Defendant has been denied the efficacy of such assistance back in that trial, by having to be tried again, and, also, based on former jeopardy, and denial, making the Defendant make a choice as to the extent of cross examination as to the witnesses, as to whether we open up the fact that there was even an accusation of a former offense being lodged against the Defendant, of which he is now absolved, and of this, we move, most respectfully, and object to the testimony of all these witnesses on those facts.

"THE COURT: Your objection will be overruled.

"MR. O'SHEA: Note our exception.

"May we have a running bill on those grounds as to all these witnesses that we stated without objection on each witness; on those grounds we have stated here, Your Honor?

"THE COURT: To the testimony, as it relates to those matters only?

"MR. O'SHEA: Yeah. Only as to what was adjudicated and heard in the prior trial, that is all, we just want that objection, Your Honor.

"THE COURT: As to anything that the State offers, that—but any other matters that you feel you must object to, you must do so.

"MR. O'SHEA: Yes, sir. I will. I will.

"THE COURT: All right.

"MR. O'SHEA: Yes, sir. Thank you for giving us that bill, Your Honor."

It is necessary to briefly summarize the controlling facts from the two trials. Appellant was first tried for the aggravated robbery of Don Funk allegedly committed on January 17, 1977. Funk positively identified appellant as the individual who robbed him on the date alleged, and testified that in the course of the robbery he was able to obtain control of the pistol used by appellant. The defense was based on alibi evidence. The jury rejected Funk's testimony and acquitted appellant of the charge.

The instant appeal is from a conviction for the aggravated robbery of Darlene Caffey allegedly committed on January 15, 1977. Caffey was able to testify that appellant resembled the person who committed the robbery, but was unable to make a positive identification of him in court as the robber. To support its case, the State called Funk to testify that he obtained a pistol from appellant on January 17. He identified the gun, which was introduced into evidence. Other evidence showed a piece of wood had been chipped from the pistol's handle, and a chip of wood found at the scene of the Caffey robbery matched the place for the missing chip from the pistol. This evidence tended to connect appellant with the Caffey robbery. Yet the identification testimony linking appellant to the pistol is also precisely that evidence which the jury in the Funk robbery case had rejected when it acquitted appellant in that case.

The issue presented is whether collateral estoppel prohibited the use of Funk's testimony in the Caffey trial.

In *Stuart v. State*, Tex.Cr.App., 561 S.W.2d 181, this Court recognized that the collateral estoppel principle applies not just between two offenses occurring at the same time and place. It also applies to the proof of an unrelated offense for which a prior acquittal was had. In *Stuart* the State proved an extraneous offense of which the defendant had previously been acquitted. This was held to be error:

"We feel that any application of an exception to the rule against admission of extraneous offenses, *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972), must necessarily be to an occurrence which has not already been conclusively established by a verdict of acquittal to have not been an extraneous offense in the first place. The prosecution should not be allowed an exception when they have failed to come within the ambit of the general rule. See *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *Blackburn v. Cross*, 510 F.2d 1014 (5th Cir.) reh. en banc denied, 517 F.2d 464 (1975); *Wingate v. Wainwright*, 464 F.2d 209 (5th Cir. 1972)."

A clear statement of the applicable principles was made in *United States v. Mock*, 604 F.2d 341 (5th Cir. 1979):

"In principle, the law of collateral estoppel is clear; in application, it can be a slippery concept indeed. According to *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), collateral estoppel 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' Id. at 443, 90 S.Ct. at 1194. Thus, *Ashe* mandates two inquiries: First, what facts were necessarily determined in the first law suit? See *United States v. Ballard*, 586 F.2d 1060 (5th Cir. 1978); *Adams v. United States*, 287 F.2d 701 (5th Cir. 1961). Second, has the government in a subsequent trial tried to relitigate facts

necessarily established against it in the first trial? Facts so established in the first trial may not be used in the second trial either as ultimate or as evidentiary facts. *Blackburn v. Cross*, 510 F.2d 1014 (5th Cir. 1975); *Wingate v. Wainwright*, 464 F.2d 209 (5th Cir. 1972). Thus, while the parent doctrine of double jeopardy bars a subsequent prosecution based on a different section of the criminal code when 'the evidence required to support a conviction upon one of them [the indictments] would have been sufficient to warrant a conviction upon the other,' its progeny, collateral estoppel, bars only the reintroduction or relitigation of *facts* already established against the government. To state the distinction in more prosaic terms, the traditional bar of double jeopardy prohibits the prosecution of the crime itself, whereas collateral estoppel, in a more modest fashion, simply forbids the government from relitigating certain facts in order to establish the fact of the crime. See *United States v. Kramer*, 289 F.2d 909 (2nd Cir. 1961) (Friendly, J.)."

In the case before us, the fact established against the State at the first trial was that appellant was not the individual seen by Funk. The only issue in that case was the conflict between Funk's identification of appellant as the robber and the defensive evidence of alibi. The first jury resolved the issue in appellant's favor. The collateral estoppel principle was violated when the State was permitted to relitigate that issue by introducing Funk's testimony at the second trial.[1] The conviction must be reversed and the cause remanded.

Before the court en banc.

## DISSENTING OPINION TO OVERRULING STATE'S MOTION FOR LEAVE TO FILE MOTION FOR REHEARING

McCORMICK, Judge.

On original submission, a panel of this Court held that appellant's conviction for

---

1. The fact that no offense was shown by Funk's testimony at the second trial is not controlling. The issue resolved against the State at the first trial and relitigated at the second was the identification issue, not the corpus delicti issue.

aggravated robbery should be reversed based on the doctrine of collateral estoppel.

Appellant was first tried for the aggravated robbery of Don Funk allegedly committed on January 17, 1977. Funk positively identified appellant as the individual who robbed him on the date alleged, and testified that in the course of the robbery he was able to obtain control of the pistol used by appellant. Following trial, appellant was acquitted of the charge.

In the case before us, appellant was convicted of the robbery of Darlene Caffey committed on January 15, 1977. Although Caffey could not positively identify appellant as the robber, she was able to say that appellant did resemble the robber. The State then called Don Funk as a witness. Funk identified a pistol and testified that he had obtained the pistol from appellant. Other evidence showed that a chip of wood found at the scene of the Caffey robbery matched a missing segment from the grip of the pistol Funk had previously identified.

The panel then concluded that the fact established against the State at the first trial was that appellant was not the individual seen by Funk and, therefore, on the basis of collateral estoppel, the conviction in the Caffey robbery should be reversed.

The doctrine of collateral estoppel, as it applies to state criminal cases, was first announced in *Ashe v. Swenson*, 397 U.S. 426, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). There, the Court stated:

"'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."

In applying the doctrine, the Supreme Court cautioned:

"The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with

realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal." (Citations omitted).

We must, therefore, examine the instant case from this standpoint. But it might also be beneficial to re-examine the facts of *Ashe v. Swenson*, supra, in order that the review be done from the proper perspective.

"... Sometime in the early hours of the morning of January 10, 1960, six men were engaged in a poker game in the basement of the home of John Gladson at Lee's Summit, Missouri. Suddenly three or four masked men, armed with a shotgun and pistols, broke into the basement and robbed each of the poker players of money and various articles of personal property. The robbers—and it has never been clear whether there were three or four of them—then fled in a car belonging to one of the victims of the robbery. Shortly thereafter the stolen car was discovered in a field, and later that morning three men were arrested by a state trooper while they were walking on a highway not far from where the abandoned car had been found. The petitioner was arrested by another officer some distance away.

"The four were subsequently charged with seven separate offenses—the armed robbery of each of the six poker players and the theft of the car. In May, 1960,

the petitioner went to trial on the charge of robbing Donald Knight, one of the participants in the poker game. At the trial the State called Knight and three of his fellow poker players as prosecution witnesses. Each of them described the circumstances of the holdup and itemized his own individual losses. The proof that an armed robbery had occurred and that personal property had been taken from Knight as well as from each of the others was unassailable. The testimony of the four victims in this regard was consistent both internally and with that of the others. But the State's evidence that the petitioner had been one of the robbers was weak. Two of the witnesses thought that there had been only three robbers altogether, and could not identify the petitioner as one of them. Another of the victims, who was the petitioner's uncle by marriage, said that at the 'patrol station' he had positively identified each of the other three men accused of the holdup, but could say only that the petitioner's voice 'sounded very much like' that of one of the robbers. The fourth participant in the poker game did identify the petitioner, but only by his 'size and height, and his actions.'

"The cross-examination of these witnesses was brief, and it was aimed primarily at exposing the weakness of their identification testimony. Defense counsel made no attempt to question their testimony regarding the holdup itself or their claims as to their losses. Knight testified without contradiction that the robbers had stolen from him his watch, $250 in cash, and about $500 in checks. His billfold, which had been found by the police in the possession of one of the three other men accused of the robbery, was admitted in evidence. The defense offered no testimony and waived final argument.

"The trial judge instructed the jury that if it found that the petitioner was one of the participants in the armed robbery, the theft of 'any money' from Knight would sustain a conviction. He also instructed the jury that if the petitioner was one of the robbers, he was guilty under the law even if he had not personally robbed Knight. The jury—though not instructed to elaborate upon its verdict—found the petitioner 'not guilty due to insufficient evidence.'

"Six weeks later the petitioner was brought to trial again, this time for the robbery of another participant in the poker game, a man named Roberts. The petitioner filed a motion to dismiss, based on his previous acquittal. The motion was overruled, and the second trial began. The witnesses were for the most part the same, though this time their testimony was substantially stronger on the issue of the petitioner's identity. For example, two witnesses who at the first trial had been wholly unable to identify the petitioner as one of the robbers, now testified that his features, size, and mannerisms matched those of one of their assailants. Another witness who before had identified the petitioner only by his size and actions now also remembered him by the unusual sound of his voice. The State further refined its case at the second trial by declining to call one of the participants in the poker game whose identification testimony at the first trial had been conspicuously negative. The case went to the jury on instructions virtually identical to those given at the first trial. This time the jury found the petitioner guilty, and he was sentenced to a 35-year term in the state penitentiary."

The Supreme Court, after discussing the general rule of collateral estoppel and the rules stated for its application, said:

"Straight forward application of the [collateral estoppel] rule to the present case can lead to but one conclusion. For the record is utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred, or that Knight had not been a victim of that robbery. The single rationally conceivable issue in dispute before the jury was whether [Ashe] had been one of the robbers. And the jury by its verdict found that he had not. The

[collateral estoppel] rule of law, therefore, would make a second prosecution for the robbery of Roberts wholly impermissible."

In the present case, the panel concluded that "the fact established against the State at the first trial was that appellant was not the individual seen by [Don Funk on January 17, 1977]. The only issue in that case was the conflict between Funk's identification of appellant as the robber and the defensive evidence of alibi." An examination of the record does not support this conclusion.

The testimony at appellant's first trial shows that Don Funk, a cab driver and the alleged victim of the robbery on January 17, 1977, was an ex-convict who admitted he had committed numerous felonies. The whole tenor of the cross-examination of Funk was to discredit him, if not make him a liar, in the eyes of the jury. Strangely enough, identity, in the sense that neither appellant nor Funk knew each other prior to the alleged robbery, was not an issue in the case. Funk testified that he had given appellant a ride in his taxi cab on at least two prior occasions. Testifying in his own behalf, appellant corroborated Funk's testimony in this regard.

Unfortunately, appellant did not see fit to have the jury arguments at the first trial made a part of the record on this appeal. Consequently, in applying the collateral estoppel rule, this Court is handicapped in "taking into account the pleadings, evidence, charge, *and other relevant matter*," in order to conclude "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." However, an examination of the evidence at both the first and second trial reveals that there was no issue or dispute but that appellant and Funk knew each other prior to the date of the alleged first robbery. Unlike the situation in *Ashe v. Swenson*, supra, the issue and dispute in the first trial did not center only on the issue of whether appellant was the robber. Also, in issue, as evidenced by appellant's cross-examination

of Funk, was whether an armed robbery had occurred at all and whether Funk had been the victim of that robbery.

Thus, the jury in the first case might have disbelieved appellant's alibi testimony and yet returned a verdict of not guilty on the basis that the State had failed to establish beyond a reasonable doubt that any robbery occurred at all on January 17, 1977. The jury in the first trial might well have concluded that Funk received the pistol in question from appellant on January 17, 1977. Or, in view of a reasonable doubt as to the occurrence of a robbery, it might have found it unnecessary to determine whether or not Funk received a pistol from appellant on that date.

A reading of *Ashe v. Swenson*, supra, indicates that it is the defendant's duty to establish his plea of former jeopardy under the collateral estoppel rule. See *Shaffer v. State*, 477 S.W.2d 873 (Tex.Cr.App.1971), and *United States v. Barket*, 530 F.2d 181 (8th Cir. 1976), cert. denied 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 282. The Supreme Court's opinion talks about an issue which the defendant seeks to foreclose from consideration at a second trial. In view of the record on the present appeal and in absence of the jury arguments at the first trial, the appellant has not carried his burden in the present case.

Further, as set forth previously, the facts in the present case are distinguishable from the facts in *Ashe v. Swenson*. The robberies in *Ashe* took place at the same place and time. In other words, the State of Missouri sought to prosecute Ashe a second time after he had been acquitted of the robbery of a different victim arising out of the same criminal transaction. In the present case, the alleged robbery of Darlene Caffey on January 15, 1977, and the alleged robbery of Don Funk on January 17, 1977, are indisputably not a part of the same criminal transaction. It must also be remembered that, after Ashe was acquitted of the robbery of Knight, he was again put on trial for the robbery of Roberts. Both of these robberies arose out of the same criminal transaction. In the present case, to reiter-

ate, appellant was acquitted for the robbery of Funk. The second trial was for the robbery of Darlene Caffey two days prior to the alleged Funk robbery. During the trial for Caffey's alleged robbery, the State did not seek to prove that appellant had robbed Funk; rather, it sought to prove that Funk obtained a pistol from appellant on January 17, 1977. Thus, Funk's testimony at the Caffey trial did not put appellant again in jeopardy on an ultimate issue of fact—the robbery of Funk. Rather, the issue was evidentiary, not ultimate. Furthermore, the record before us does not support the conclusion that appellant's acquittal in the Funk trial foreclosed the issue as to the acquisition of the pistol by Funk from the appellant.

The panel's reliance on *Stuart v. State,* 561 S.W.2d 181 (Tex.Cr.App.1978), is clearly misplaced. *Stuart* was decided based on the rules relating to the admissibility of extraneous offenses, and the phrase "collateral estoppel" does not appear in the Court's opinion. In *Stuart,* the Court held that the State's attempt to show an extraneous rape offense was precluded by the fact that a jury had previously determined that no offense had occurred. Although that holding may be analagous to the doctrine of collateral estoppel, the instant case differs in that the guilt or innocence of appellant in the first alleged robbery of Funk was not being relitigated and the prior decision that no robbery had occurred did not foreclose the issue of the origin of the gun.

It cannot be said from the record before us that in the first trial it was established that Funk did not get the gun in question from appellant. Nor can it be said that the introduction of the gun at the trial was an effort by the State to relitigate appellant's guilt or innocence of the first alleged robbery.

Attention should also be called to the case of *Adams v. United States,* 287 F.2d 701 (5th Cir. 1961), cited in the case of *United States v. Mock,* 604 F.2d 341 (5th Cir. 1979), which appears in the panel opinion. In *Adams,* the defendant was convicted of per-

jury. The charge grew out of testimony he had given at a previous trial for transporting and possessing moonshine whiskey. At the moonshine trial, defendant interposed the defense of alibi alleging that he was at a party in Georgia at the time the offense was alleged to have occurred. If true, he could not have been the person who fled from a car which was stopped on the same night by police officers in Florida.

Following a thorough examination of the federal doctrine of collateral estoppel (later made applicable to the states in *Ashe v. Swenson,* supra) the Court, in *Adams,* concluded that the "not guilty" verdict in the moonshine case did not necessarily show that the jury found defendant's alibi to have been true. In fact, the Court, characterizing the general verdict as "a Scotch verdict of 'not proven,'" found there was no necessary inconsistency between Adams' innocence of the moonshine charge and his attendance at the party. "The jury conceivably could have discredited entirely the 'party story' and still have returned a verdict of not guilty." *Adams v. United States,* supra, at 705. Finally, the court concluded:

> "... Quite properly, the charge to the jury in the moonshine case did not require that the jury find the alibi to be true in order to acquit Z. A. [Adams]. It merely specified that should they believe the alibi they must acquit him. But it also gave the usual directions to acquit unless they believed the Government had proved the other elements of its case beyond a reasonable doubt." *Adams v. United States,* supra, at 706.

In arriving at the conclusion that the doctrine of collateral estoppel is not applicable to the instant case, it is not necessary to rely entirely on the decisions from other jurisdictions. This Court, in *Sutton v. State,* 495 S.W.2d 912 (Tex.Cr.App.1972), dealt with a contention similar to the one presented by this appeal. In *Sutton,* the defendant was convicted of robbery. The evidence showed that following the commission of the robbery the robbers fired at a police officer when the officer attempted to

stop the getaway car. The defendant was tried for assault with intent to murder and was acquitted. On appeal of the robbery conviction, the defendant sought to invoke the collateral estoppel doctrine, urging that the only rationally conceivable issue before the jury in the former trial for assault was that of identity, and that the State cannot try him for the offense of robbery.

In affirming the conviction for the robbery, the Court concluded that the "identity of appellant as one of the robbers of the Safeway store was not the single rational conceivable issue at the prior trial. We hold, as a matter of law, that the rule of collateral estoppel is not applicable to the instant case."

A similar conclusion was reached by this Court in *Warren v. State*, 514 S.W.2d 458 (Tex.Cr.App.1974). There, the defendant contended that his conviction for receiving and concealing stolen property was barred by a prior acquittal on a charge of burglary with intent to commit theft. At the first trial, the defendant was tried on the theory that he was a principal not present at the scene of the burglary, but had agreed with two other persons who did commit the burglary and was doing some act in furtherance of the common design at the time of the commission of the burglary. At the trial for receiving and concealing stolen property, one of the burglars testified concerning the agreement to commit the burglary in order to show the knowledge of the defendant that the property he received was stolen.

The defendant in *Warren* contended that the prior acquittal had decided the issue of a prior agreement in his favor and that such issue could not again be litigated in the receiving and concealing prosecution. This Court concluded that such was not an issue previously litigated and as such was admissible to show the defendant's knowledge.

Based on the record before us, a rational jury could have grounded its verdict in the Funk robbery trial on an issue other than the finding that appellant was not present. Following the teachings of *Ashe v. Swenson*, supra, I do not believe that the doctrine of collateral estoppel is applicable to the case at bar. I would grant the State's motion for leave to file motion for rehearing, and on reconsideration, affirm appellant's conviction.

For these reasons, I dissent.

DALLY and W. C. DAVIS, JJ., join in this dissent.