**Ex parte Terry Wayne MINIFEE.**

**No. 12–91–00249–CR.**

Court of Appeals of Texas, Tyler.

Oct. 30, 1992.

Allen Boswell, Athens, for appellant.

E. Ray Andrews, Dist. Atty., Athens, for appellee.

COLLEY, Justice.

This is an appeal from the trial court's order refusing to grant Applicant/Appellant Terry Wayne Minifee *habeas corpus* relief against the prosecution of an indictment charging him with aggravated sexual assault under TEXAS PENAL CODE ANN. § 22.021(a)(1)(A)(i), (2)(A)(iv), in trial court cause number A–5702. We will affirm the judgment.

The ground alleged by Appellant at a hearing on his application for the writ is that because he was acquitted by the jury in trial court cause number A–5704 of the offense of aggravated robbery of the same victim, in the same criminal transaction,[1] the jury in the first case "necessarily" acquitted Appellant upon the issue of "identity"; therefore, jeopardy's collateral estoppel component prohibits his prosecution in this case under *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

■■■ Appellant claimed at trial, and claims in this Court, that the prosecution of the instant case violates his statutory and constitutional right not to be twice placed in "jeopardy" for the same offense. Based on Appellant's arguments at trial and in this Court, we conclude that he is contending that, contrary to jeopardy's protections found in the federal and state constitutions,[2] he is being unconstitutionally subjected to prosecution in the aggravated assault case.

The Fifth Circuit in *United States v. Mock*, 604 F.2d 341 (1979), in its review of *Ashe v. Swenson*, quoted the core of the Supreme Court's definition of collateral estoppel to mean:

[S]imply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same par-

ties in any future lawsuit. [*Ashe v. Swenson*, 397 U.S.] at 443 [90 S.Ct. at 1194].

*United States v. Mock*, 604 F.2d at 343; *see also Dedrick v. State*, 623 S.W.2d at 336. According to the Fifth Circuit, the application of jeopardy's principle of collateral estoppel declared in *Ashe v. Swenson* requires:

[T]wo inquiries: First, what facts are necessarily determined in the first ... suit? (Citations omitted.) Second, has the State in a subsequent trial tried to relitigate facts necessarily established against it in the first trial? Facts so established in the first trial may not be used in the second trial either as ultimate or as evidentiary facts.

*United States v. Mock*, 604 F.2d at 343.

*Ashe v. Swenson* teaches that the reviewing court must inspect the record of the first trial, not with a "hypercritical" approach, but "with realism and rationality." We have carefully studied the indictment, the evidence, the court's charge at the guilt/innocent stage, the arguments thereunder, and the jury's general verdict of not guilty upon which the judgment of acquittal was entered.

The paragraph of the charge of the trial court in the first case, applying the law of aggravated robbery to the facts of that case, read as follows:

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the Defendant, TERRY WAYNE MINIFEE, on or about the 10th day of April, 1989, in the County of Henderson and the State of Texas, as alleged in the indictment, did then and there while in the course of committing theft and with intent to obtain and maintain control of the property of [R.K.], the said property being U.S. Currency without the effective

---

1. Both offenses, according to the State's evidence, occurred on the same day, first the robbery, and then the assault in a continuing sequence.

2. From our reading of the case law, protections against "double jeopardy" afforded by the fifth

amendment and Texas Constitution art. I, sec. 14, are identical, at least as to the doctrine of the collateral estoppel component. *See, e.g., Dedrick v. State*, 623 S.W.2d 332, 336 (Tex.Cr. App.1981).

consent of the said [R.K.] and with intent to deprive the said [R.K.] of said property by using or exhibiting a deadly weapon, to-wit: a knife, knowingly or intentionally threatened or placed the said [R.K.] in fear of imminent bodily injury or death, you will find the Defendant guilty of the offense of aggravated robbery and so say by your verdict.

If you do not so believe, or if you have a reasonable doubt thereof, you will acquit the Defendant of the offense of aggravated robbery and find him not guilty.

The State's evidence shows that during the early morning hours of April 4, 1989, at about 6:30 A.M., a black male entered a convenience store, approached the cashier, R.K., and handed her a note reading, "Give me the money and fast." The victim, thinking it was a joke, laughed and told the robber, "You're kidding me." He replied, "No." The victim testified that she gave the robber all paper currency out of the cash register. The victim testified that as she was handing the money over to the robber, he pulled a knife out from behind his back, and according to her testimony, told her to come out of the store with him, telling her he was going to "rape" her. The victim testified that she was forced to accompany the robber to the back of the store to a large depression below a wall about four or five feet tall. She said the robber got up on the wall and jumped the four or five feet onto the ground in the depression and told her to jump down also, which she did. The victim tried, but could not explain why, after the assailant jumped down into the depression, she jumped down to join him. She then told a somewhat bizarre story about being sexually assaulted by the robber. When she was released by the assailant, she climbed up the back of the depression and began running to the front of the store. During that time, she met a store customer she knew. When he asked her what had happened, she told him she had been robbed. At that point, the victim tried without success to call her boss, the store owner, and then called the

police who reported receiving the call at about 6:42 A.M. Additionally, the State's evidence reflected that only one set of footprints were discovered in the muddy surface of the depression. While the victim testified that only about thirty minutes elapsed between the time she was robbed and the time she called the police, other State's evidence shows that the register was opened without a sale at 5:36 A.M.[3] and that the police received the call from the victim at 6:42 A.M. (only six minutes later). Moreover, the victim reported to the police that she had been robbed by a "white man," but later changed her statement, telling them that assailant, a black man, had told her to tell the police that a white man had robbed her. In the first trial, the victim testified fully to the actor's conduct constituting the aggravated robbery as well as to the actor's conduct constituting the aggravated sexual assault.

From reading the record, we are persuaded that the testimony of the State's only eye-witness, the victim, R.K., was disbelieved by the jury who obviously considered her statements and testimony to be somewhat uncredible, hence, the not guilty general verdict followed. However, we are unable to conclude that a rational jury could not have grounded the verdict on some issue other than the identity of the Appellant as the robber. The jury might well have rendered its verdict of not guilty because they did not believe beyond a reasonable doubt that the offense occurred, or that the Appellant used or exhibited a knife before, during, or after the robbery, if any was committed.

Based on the above reasons, we overrule Appellant's point of error and affirm the judgment and order of the trial court denying habeas corpus relief.

---

3. The State introduced unrefuted evidence that the register had not been "corrected" for day-

light savings time and should have been set forward to read 6:36 A.M.